UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80103-CANNON

UNITED STATES OF AMERICA

v.

DUSTIN SEAN McCABE,

   Defendant.
_____/

## USA'S TRIAL BRIEF REGARDING SEAMAN'S MANSLAUGHTER, THEORY OF PROSECUTION, AND PROPOSED JURY INSTRUCTION

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits the following trial briefing in anticipation of the Court's disposition of pretrial rulings and the charge conference. In it, the Government sets forth the law governing seaman's manslaughter, the Government's theory of the case, and the Government's proposed jury instruction for the seaman's manslaughter charge.

### A. LEGAL BACKGROUND OF "SEAMAN'S MANSLAUGHTER"

This case involves an unusual statute: Title 18, United States Code, Section 1115. The statute is commonly referred to as "seaman's manslaughter," but it is more aptly defined in the United States Code as "misconduct or neglect of ship officers." 18 U.S.C. § 1115. Section 1115's predecessor was enacted in 1838 as part of a statute that defined licensing and safety requirements for steamboats. Act of July 7, 1838, 5 Stat. 304. Steamboats had become a common feature of American waterways by the 1830s, and the statute's purpose was to "provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam." *Id.* In that way, "[t]he goal of the law was to prevent [] catastrophes in the future by demanding utmost vigilance from the crew and attaching criminal liability for fatal lapses." *United States v. O'Keefe*,

No. 03-137, 2024 U.S. Dist. LEXIS 1494, at *3 (E.D. La. Feb. 3, 2004), *aff'd* 426 F.3d 274 (5th Cir. 2005). The law's modern version, which is charged here, differs from the original law in two important ways. First, the original applied only to "any steamboat or vessel propelled in whole or in part by steam," 5 Stat. 304, but the modern statute instead applies more broadly to "any steamboat or vessel" without the steam requirement, 18 U.S.C. § 1115. Second, while the original statute provided that a violator of the statute "shall be guilty of manslaughter," 5 Stat. 304, the modern statute eliminates the word "manslaughter," 18 U.S.C. § 1115.

Section 1115's first paragraph, which is charged here, criminalizes two largely overlapping forms of conduct. First, for captains, engineers, pilots, and other persons employed on a vessel, it criminalizes any "misconduct, negligence, or inattention to duty" that leads a life to be "destroyed." 18 U.S.C. § 1115. Second, for owners, charterers, inspectors, or other public officers, it criminalizes any "fraud, neglect, connivance, misconduct, or violation of law" that leads a life to be "destroyed." 18 U.S.C. § 1115. Although district courts have used varying constructions of the elements that result from this statutory wording, the Fifth Circuit in the most significant decision this century approved of jury instructions that broke the crime down into three elements. *See* Docket Entry 71 of *O'Keefe*, 2024 U.S. Dist. LEXIS 1494.[1] First, the Defendant must be a "captain, engineer, pilot, or other person employed on any steamboat or vessel" or an "owner [or] charterer." 18 U.S.C. § 1115. Second, "the life of any person [must be] destroyed." 18 U.S.C. § 1115. And finally, that destruction of life must be "by [the Defendant's]" misconduct, negligence, or inattention to his duties as the captain or other person employed *or* his fraud, neglect, connivance, misconduct, or violation of law as the owner or charterer. 18 U.S.C. § 1115. The first

---

[1] Because the *O'Keefe* Fifth Circuit opinion only quotes the instructions "in relevant part" and the district court's original filing is not available on CourtLink, the three elements discussed in this Trial Brief are derived from the appellate briefing for the *O'Keefe* Fifth Circuit case.

two of these are simple and uncontroversial, but the third—that the death be "by" the misconduct—raises three issues that the rest of this Section addresses: (1) the standard of negligence that applies, (2) the standard of causation that connects that negligence to the death, and (3) the level of specificity that must be present in the jury's finding that the Defendant's negligence proximately caused the victim's death.

### 1. *Section 1115 Requires Simple or "Mere" Negligence, Not Gross Negligence.*

As to the proper negligence standard, the Fifth Circuit's decision in *United States v. O'Keefe,* 426 F.3d 274 (5th Cir. 2005), which the Eleventh Circuit followed in *United States v. Alvarez*, 809 F. App'x 562, 569 (11th Cir. 2020), is the seminal case addressing the issue and holds that only simple negligence is required. In *O'Keefe*, the court rejected a defendant's claim that gross negligence should instead apply by looking at Section 1115's plain wording and then considering the history of the statute and the way that the statute interacts with common law. That circuit court opinion was built on an extensive historical analysis by the district court of cases in the decades after the 1838 statute's passage that showed that any level of negligence was sufficient for criminal liability, *see* 2024 U.S. Dist. LEXIS 1494, at *3-10, finding, as the Fifth Circuit affirmed, that "[i]t appears clear from the purpose of the statute, its legislative history and the available case law interpreting it that any degree of negligence is sufficient to meet the culpability threshold, however slight," *id.* at *10-11.

On the plain language front, the *O'Keefe* court held that the statute's use of "negligence" was "unambiguous" on its own terms "and therefore must be given their plain meaning," 426 F.3d at 279, with the court going on to hold that "we find nothing in the statute's terms suggesting that the words 'misconduct, negligence or inattention,' were ever meant to imply gross negligence or heat of passion," *id*. That reading of the statute's plain language was reinforced by the district

court's historical analysis, which the *O'Keefe* court found to "strongly suggest[] that Congress did not intend a requirement of the heightened mens rea that [the defendant] seeks." *Id*. at 278. That finding is reinforced by Section 1115's elimination of the word "manslaughter" from its predecessor statute drives home that simple negligence is the proper standard of liability because manslaughter under Section 1112 requires at least gross negligence, *see e.g., United States v. Benally*, 843 F.3d 350, 353 (9th Cir. 2016) ("A conviction for involuntary manslaughter requires, at a minimum, a mental state of gross negligence, defined as a wanton or reckless disregard for human life." (quotations omitted)). In this sense, while Section 1115 is commonly referred to as "seaman's manslaughter," the term is a misnomer in that only simple negligence is required. *See O'Keefe*, 426 F.3d at 279; *see also United States v. Kaluza*, 780 F.3d 647, 657 (5th Cir. 2015).

Simple negligence satisfying the *mens rea* for this crime begs the question of what constitutes simple negligence in the first place. The answer to that question has been litigated in federal courts for decades because, as the Eleventh Circuit has recognized, negligence "occurr[ing] on a ship sailing in navigable waters" is "governed by federal maritime law," *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1263-64 (11th Cir. 2020), which itself is grounded in "general principles of negligence law," *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). With respect to the duty of care that flows from that standard, negligence "hinges on whether [a defendant] knew or should have known of [a] dangerous condition," *Carroll*, 955 F.3d at 1264, with a negligent failure to warn about a condition is a discrete cause of action from the negligent failure to maintain a safe vessel, *see id*. In *O'Keefe*, for example, the defendant had recklessly driven a tugboat in a manner that led to an accident and capsizing that killed the victim, and in proving that up the prosecution introduced evidence of two forms of negligence that related to the accident: (1) the defendant's cocaine use that day and (2) the fact that the defendant had the victim on the

tugboat when she wasn't authorized to be on it. 426 F.3d at 276. The same types of evidence were involved in *Alvarez*, where the defendant's drug use was again an issue along with his operating without a license. *See Alvarez*, 809 F. App'x at 564. These negligent acts mattered on their own terms because they endangered the passengers but also because constituted illegal activity by the respective defendants, with the Supreme Court having long observed regarding negligence at sea that "the legal duties placed on the stevedore and the vessel's justifiable expectations that those duties will be performed are relevant in determining whether the shipowner has breached its duty." *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 176 (1981).[2]

## 2. Section 1115 Requires that a Defendant's Negligence, Violation of Law, or Other Form of Misconduct Proximately Cause the Death.

The *O'Keefe* court directly addressed the negligence standard, but the case did not directly address the standard of causation. That said, the *O'Keefe* court affirmed a jury instruction that used the term "proximate cause" that went undefined and unremarked upon—as indeed it often is. *See United States v. Houston*, 406 F.3d 1121, 1123 n.4 (9th Cir. 2005) ("[T]he term proximate cause is not well defined."). And although Section 1115 does not itself use the term "proximate cause," applying that standard to Section 1115 prosecutions is consistent with other statutes where "resulting in death" is part of the calculus, including controlling law in the pre-1980 Fifth Circuit holding "'resulting in death' statutory language as implying proximate cause." *United States v. Pineda-Doval*, 614 F.3d 1019, 1027 & n.4 (9th Cir. 2010) (collecting cases including *United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979)).[3] And while the Eleventh Circuit does not specifically use

---

[2] This negligence aspect of the Defendant's conduct as the captain of the vessel is separate from his violation of law as the vessel's owner, which is its own separate basis for criminal liability. *See* 18 U.S.C. § 1115 (criminalizing "violation of law" for owners).

[3] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

the word "proximate cause" in any criminal pattern instruction, the court's pattern instruction for involuntary manslaughter provides two component pieces to it: that the death "resulted from" the conduct and that "the Defendant knew or could have reasonably foreseen that the Defendant's conduct was or could be a threat to the lives of others." Eleventh Circuit Pattern Instruction O46.2. Thus while there is no pattern instruction in any circuit for Section 1115, incorporating proximate cause into a proposed instruction should build on these concepts and the Eleventh Circuit guidance by using language in this same vein.

### 3. *The Jury Need Not Unanimously Find that Any One Discrete Negligent Act or Violation of Law Proximately Caused the Victim's Death.*

There is another aspect of causation that bears noting: the jury need not unanimously agree as to a specific negligent act that proximately caused M.C.G.F.'s death. Rather, the jury must only agree that the Defendant's wrongdoing *in general* proximately caused M.C.G.F.'s death, with jurors free to determine that one negligent act or the other was the proximate cause. By way of example, one juror may decide that the Defendant's failing to report the March 28 malfunctions to the United States Coast Guard ("USCG") was the root proximate cause of M.C.G.F.'s death, while another may decide that it was actually the Defendant's failure to fix the malfunctioning equipment, while a third still may decide that it was the Defendant failing to warn the March 29 passengers, including M.C.G.F., of the malfunction. What the jurors must decide unanimously is instead only that the Defendant's negligent conduct proximately caused M.C.G.F.'s death.

This framework for the verdict here flows from the longstanding principle that there's no need for the jury to decide as to "which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999). Rather, courts have long recognized the distinction between *elements* of a crime and *means* of satisfying those elements,

explaining that "[t]he law has long been clear that alternative means in a federal criminal statute are not alternative 'elements.'" *Gibson v. United States*, No. 16-16584-F, 2017 U.S. App. LEXIS 5737, at *11 (11th Cir. Mar. 8, 2017). That principle extends to cases where a defendant needs to commit a negligent or illegal act or entice someone to do the same to lead to a conviction: the legal violation they commit is a mere means of satisfying an element, not an element itself, and therefore does not require jury unanimity. *See, e.g., United States v. Jockish*, 857 F.3d 1122, 1128-29 (11th Cir. 2017) (no unanimity required for which specific statute the defendant was enticing the minor to violate); *United States v. McIntosh*, 753 F.3d 388, 392 (2d Cir. 2014) (no unanimity required for what act constituted an "assault" under the federal assault statute); *Schad v. Arizona*, 501 U.S. 624 (1991) (no unanimity required for murder statute that provides for premeditated murder and felony murder). Indeed, "it has long been recognized that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death." *People v. Sanchez*, 29 P.3d 209, 216 (Cal. 2001); *see also United States v. Woods*, 59 F. App'x 319, 324 (10th Cir. 2003). In this sense, the jury need only conclude that the Defendant's negligence in its totality proximately caused the victim's death, which is the element of the offense.

## B. GOVERNMENT'S THEORY OF THE CASE

With that legal background in place, the Government's theory of the case here is straightforward: that the Defendant's negligent operation of the M/V SOUTHERN COMFORT (the "Vessel") as the captain and owner on March 29 proximately caused M.C.G.F.'s death that day. There is unlikely to be any dispute that the Defendant owned and captained the Vessel (Element One) or that the victim M.C.G.F. died (Element Two).

That will leave just Element Three—that the Defendant's negligence proximately caused M.C.G.F.'s death—and its two constituent parts: (1) the Defendant's engaging in negligent

conduct and (2) that the negligent conduct proximately caused M.C.G.F.'s death. As to the first subpart, the Defendant's negligence, the Government will prove five discrete negligent acts at trial that the Defendant committed in operating the Vessel on March 29, 2020, the date of the incident: (1) violating a Palm Beach County emergency order by operating at day, (2) failing to report the prior day's malfunctions to the USCG as required by law, (3) failing to be enrolled in a drug testing program or to perform drug testing after the incident, as required by law, (4) failing to repair the propulsion system despite the Defendant's having been on notice of its malfunctions the day before, and (5) failing to warn his March 29 passengers of the malfunctions from the day before so that they would know to be even warier of the propulsion system than they otherwise would have been. Each of these acts constitute at least simple negligence because each involve a duty that the Defendant had to his passengers that he failed to perform. The first three, which involve failing to abide by local ordinances and comply with federal regulations, are legal violations that constitute negligence based on the Defendant's obligation to abide by the law while operating his vessel, and they are also violations of law covered by Section 1115's owner provision. The final two, which involve his failure to repair the mechanical failures and to notify his passengers of those failure, sound in traditional tort law negligence, with the Defendant breaching his duty to maintain a safe vessel that was free of known dangers and (separately) to notify the passengers of the danger. The sum of all this is five separate instances of negligence that day, with the first three of those also constituting violations of law and the last two constituting neglect committed by the Defendant in his capacity as the Vessel's owner or charterer.

From there, the Government will prove proximate causation. In so doing, it first bears noting that the *O'Keefe* case reflects that the Government need not prove that any one particular act was the proximate cause of the death. Moreover, the jury need not unanimously agree as to

which negligent act was the proximate cause of the death. Rather, by the plain meaning of the statute and its resulting elements, the jury need only find that the Defendant's negligence, broadly speaking, caused the death. Here, the Government's theory is that the jurors can easily find proximate causation based on the Defendant's many negligent acts relating to the propulsion system's malfunctions—at least his failure to report to the USCG, to repair the issues, and to notify his passengers including M.C.G.F. on March 29.

### C. GOVERNMENT'S PROPOSED JURY INSTRUCTION

Based on the foregoing, the Government proposes two jury instructions in this matter, one concerning the seaman's manslaughter statute and the other concerning the federal regulations that attend seafaring. The seaman's manslaughter instruction is modeled in its elements and definition of "negligence" on the district court's instruction in *O'Keefe* that the Fifth Circuit endorsed, with the definition of "proximate cause" derived from the Eleventh Circuit's involuntary manslaughter elements relating to causation. *See* Eleventh Circuit Pattern Instruction O46.2 (Elements Three and Four). The fact that there are two alternative bases for finding the Government to have satisfied the third element flows from the fact that the Defendant was both the owner/charterer and the captain, pilot, and person employed on the Vessel.  The second series of instructions contains relevant federal regulations, explaining what federal regulations are and then providing their plain language.

### 1. *Instruction One: Seaman's Manslaughter*

**Misconduct or Neglect of Ship Officers**
**18 USC § 1115**

Count One charges the Defendant with Misconduct or Neglect of Ship Officers. It's a Federal crime for a captain, engineer, pilot, or other person employed on a vessel to engage in misconduct, negligence, or inattention to his duties, or for a captain or charterer of a vessel to

engage in fraud, neglect, connivance, misconduct, or violation of law that proximately causes the loss of a life.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1)  that the Defendant was an owner, charterer, captain, engineer, pilot, or other person employed on the M/V SOUTHERN COMFORT;

(2)  that a person lost his or her life; and

(3)  that, if a person lost his or her life and the Defendant was a captain, engineer, pilot, or other person employed on the vessel, the loss of life was proximately caused by the misconduct, negligence, or inattention of the Defendant to his duties upon the vessel, upon which he was employed;

*or*

that, if a person lost his or her life and the Defendant was an owner or charterer of the vessel, the loss of life was proximately caused by the fraud, neglect, connivance, misconduct, or violation of law of the Defendant as the owner or charterer of the vessel.

"Negligence" is a breach of duty, which means an omission to perform some duty, or a violation of some rule or standard of care, which is made to govern and control one in the discharge of some duty.

Negligent conduct "proximately causes" a loss of life if the loss of life resulted from the negligence and it was reasonably foreseeable that the negligent conduct was or could be a threat to the lives of others.

### 2.  *Instruction Two: Regulations Governing Vessel Operation*

Persons employed on a vessel are required to comply the law, including the provisions of the law set forth in the Code of Federal Regulations. This Code of Federal Regulations is to be considered by the jury as one of the circumstances in evidence in the case surrounding the

conduct of the defendant.

**Title 46 Code of Federal Regulations**

**§ 4.05-1 Notice of Marine Casualty**

The following is a federal regulation governing operating a vessel in navigable waters:

Immediately after the addressing of resultant safety concerns, the owner, agent, master, operator, or person in charge, shall notify the nearest Sector Office, Marine Inspection Office or Coast Guard Group Office whenever a vessel is involved in a marine casualty consisting in—

1. An unintended grounding, or an unintended strike of (allision with) a bridge;

2. An intended grounding, or an intended strike of a bridge, that creates a hazard to navigation, the environment, or the safety of a vessel, or that meets any criterion of paragraphs (a) (3) through (8);

3. A loss of main propulsion, primary steering, or any associated component or control system that reduces the maneuverability of the vessel;

4. An occurrence materially and adversely affecting the vessel's seaworthiness or fitness for service or route, including but not limited to fire, flooding, or failure of or damage to fixed fire-extinguishing systems, lifesaving equipment, auxiliary power-generating equipment, or bilge-pumping systems;

5. A loss of life;

6. An injury that requires professional medical treatment (treatment beyond first aid) and, if the person is engaged or employed on board a vessel in commercial service, that renders the individual unfit to perform his or her routine duties; or

7. An occurrence causing property-damage in excess of $75,000, this damage including the cost of labor and material to restore the property to its condition before the occurrence, but

11

not including the cost of salvage, cleaning, gas-freeing, drydocking, or demurrage.

8. An occurrence involving significant harm to the environment as defined in § 4.03-65.

### § 4.06-5 Drug Testing Requirements

The following is a federal regulation governing operating a vessel in navigable waters:

1. Any individual engaged or employed on board a vessel who is determined to be directly involved in a serious marine incidents must provide a blood, breath, saliva, or urine specimen for chemical testing when directed to do so by the marine employer or a law enforcement officer.

2. If the individual refuses to provide a blood, breath, saliva, or urine specimen, this refusal must be noted on Forms CG-2692 and CG-2692B and in the vessel's official log book, if a log book is required. The marine employer must remove the individual as soon as practical from duties that directly affect the safe operation of the vessel.

3. Individuals subject to alcohol testing after a serious marine incidents are prohibited from consuming alcohol beverages for 8 hours following the occurrence of the serious marine incidents or until after the alcohol testing required by this part is completed.

4. No individual may be compelled to provide specimens for alcohol and drug testing required by this part. However, refusal to provide specimens is a violation of this subpart and may subject the individual to suspension and revocation proceedings under part 5 of this chapter, a civil penalty, or both.

### § 16.115 and § 16.230(b) Chemical Testing

Violation of this part is subject to the civil penalties set forth in 46 U.S.C. 2115. Any person who fails to implement or conduct, or who otherwise fails to comply with the requirements for chemical testing for dangerous drugs as prescribed under this part, is liable to the United States

Government for a civil penalty of not more than $5,000 for each violation. Each day of a continuing violation will constitute a separate violation.

…

(b) Marine employers shall establish programs for the chemical testing for dangerous drugs on a random basis of crewmembers on uninspected vessels who:

1. Are required by law or regulation to hold a license issued by the Coast Guard in order to perform their duties on the vessel;

2. Perform duties and functions directly related to the safe operation of the vessel;

3. Perform the duties and functions of patrolmen or watchmen required by this chapter; or,

4. Are specifically assigned the duties of warning, mustering, assembling, assisting, or controlling the movement of passengers during emergencies.

**D. CONCLUSION**

For the foregoing reasons, the United States respectfully submits that the Court should issue the proposed instructions contained herein.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: December 30, 2024

By: */s/ Zachary A. Keller*
ZACHARY A. KELLER
Assistant United States Attorney
U.S. Attorney's Office – SDFL
Court No: A5502767
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9023
Email: zachary.keller@usdoj.gov

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 30, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
ZACHARY A. KELLER
Assistant United States Attorney
