UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80103-CANNON

UNITED STATES OF AMERICA

v.

DUSTIN SEAN McCABE,

    Defendant.
_____/

**UNITED STATES' AMENDED NOTICE OF INTENT
TO INTRODUCE EXPERT TESTIMONY**

The United States of America, by and through the undersigned Assistant United States Attorney, files this Notice of Intent to Introduce Expert Testimony, pursuant to Federal Rule of Evidence 702. Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States provides the following summary of the expert testimony it will seek to introduce at trial:

1. **Allan Roth, Advanced Journeyman Marine Inspector, United States Coast Guard ("USCG")**

Training/Qualifications:  As set forth in his CV, which was produced to the defense on January 11, 2025, Mr. Roth is an Advanced Journeyman Marine Inspector with the USCG Traveling Marine Inspector Team out of USCG Headquarters.  He has been operating as a marine inspector for 13 years, serving in San Francisco, California, Puerto Rico, and USCG Activities Europe, in Holland, before coming to the traveling team in Washington D.C. Prior to becoming a marine inspector, Mr. Roth was an engineer, mechanic, and diver on Coast Guard vessels for 16 years. In his capacity as an Advanced Journeyman Inspector, Mr. Roth travels the world, boards and inspects vessels, evaluating their engine function, compliance with rules and regulations, and general safety. In connection with doing this work, Mr. Roth has trained in evaluating vessels'

function and how modifying vessels by boat owners can affect vessel performance. Mr. Roth's role also involves investigating and evaluating compliance with U.S. Law and Regulations, along with International Codes and Regulations, and industry standards as to vessel upkeep and operation, including with respect to specific types of vessel uses. This can include scuba diving, as well as accidents that can occur as a result of noncompliance. He gained significant experience inspecting scuba charter vessels while working in Puerto Rico where there are a significant amount of small passenger vessels that engage in scuba charters.

In addition to his current work as a USCG Advanced Journeyman Marine Inspector, Mr. Roth has also been trained and qualified as a USCG diver since 2005. As a USCG diver, he has engaged in scuba diving activities and has gained extensive experience entering onto vessels in connection with those scuba diving operations. This experience gave Mr. Roth a strong understanding of, and familiarity with, standards of practice surrounding scuba diving.

<u>Summary of Testimony/Opinion and Basis</u>: Mr. Roth will first describe his educational and professional background, focusing on his experience in evaluating vessels for compliance with rules and regulations and for passenger safety. He will explain that in his years working as an Advanced Journeyman Inspector and USCG engineer, he has inspected hundreds of vessels, including more than a dozen vessels equipped for scuba charters. He will also explain that as a USCG Diver, he has himself participated in more than 100 scuba outings and understands the logistics and mechanics of scuba diving and chartering scuba ventures. He will also discuss his in-depth knowledge of vessel propulsion systems, gained through his years as a USCG mechanic, engineer, and marine inspector.

Mr. Roth will then explain basic principles and components of a vessel propulsion system, and how they usually work on vessel's of this size. He will then further explain common practices

2

used when operating and modifying a vessel in the small passenger vessels and similar uninspected vessels. He will then explain the nuances of scuba charters, with specific attention to the fact that scuba chartering inherently involves placing passengers near the propeller system, which is located at the rear of the vessel where the passengers enter and exit the vessel. He will next explain that propellers are inherently dangerous when engaged because they spin at a rate that can cause a person to be sucked into the propeller system and seriously injured or killed and that in scuba ventures, the propeller systems are a point of particular care because the passengers will be entering and exiting the vessel near the propellers. That said, Mr. Roth will also explain that when an engine is in neutral gear, the propellers will generally move with the currents at a low speed that generally will not present a serious danger and that will not tend to generate chop-type wounds.

Mr. Roth will next explain the knowledge and experience required for anyone making modifications or tampering with a vessels propulsion system.  He will also add that that any manufacturer's recommendations should be followed including requirements related to certifications to work on certain components of the propulsion system. Mr. Roth will further explain that it is best marine practice, and common practice, to conduct sea trials or test drive the vessel prior to taking passengers for hire particularly in the case of scuba charter operations where passengers are near the propellers. Mr. Roth will also explain that there is nuance to operating any vessel and even licensed captains need to familiarize themselves when operating a specific vessel, because every vessel operates differently.

Mr. Roth will then explain his review of the evidence, including (1) photographs of the M/V SOUTHERN COMFORT (the "Vessel"), including its engine controls and area where the engine controls were removed, (2) reports of the March 28 and March 29 incidents involving the Vessel, including photographs of the wounds caused on both dates and the broken spear gun on

3

March 28, (3) statements made by the Defendant regarding his modification of the engine controls, and (4) maps of the area where the March 29 incident occurred.

Finally, Mr. Roth will explain six conclusions he reached based on his review of the evidence and experience in scuba ventures. First, Mr. Roth will testify that in his opinion, removing main deck engine controls can easily lead to problems with the engine's ability to communicate properly with the propeller system, which can cause malfunctions that are hard to predict and that can cause serious danger in the scuba context due to the proximity passengers have to propellers. Second, Mr. Roth will testify that in his opinion, the experience required for removing or modifying engine controls, and why that experience is import when repairing or modifying the type of engine at issue. Third, Mr. Roth will testify that in his opinion, a scuba charter vessel experiencing engine control issues, like the Vessel did in this case, would necessitate first reporting the incident to the USCG and then ceasing all operations until the vessel had been properly repaired, and those repairs were validated through a sea trial or test drive. Fourth, Mr. Roth will testify that in his opinion, the industry standard for an incident where a passenger sustains an injury that appears to be related to the vessel's performance would be to report the incident to the USCG, to cease operations until a properly experienced mechanic had inspected the vessel, and it would be highly unusual to take another set of passengers out the following day without having conducted sufficient sea trials. Fifth, Mr. Roth will testify that in his opinion, the breaking of a graphite spear gun, the injury caused to J.H., and the chop wounds that the victim in this case sustained all indicate that the Vessel's propulsion system was engaged at the time these three events occurred due to the power and frequency of blade rotation that would be required for those events to occur. And sixth, Mr. Roth will testify that in his opinion, a propeller engaging in reverse could cause a person near

4

the vessel to be sucked into the propeller and injured in a manner consistent with the victim's injuries.

Allan Roth
Senior Marine Inspector, USCG

[Remainder of Page Intentionally Left Blank.]

2.  **Andrew Cole, Lieutenant Commander, USCG**

<u>Training/Qualifications</u>:  As set forth in his CV, which was produced to the defense on January 11, 2025, Lieutenant Commander ("LCDR") Cole is a Journeyman Marine Inspector and Qualified Investigating Officer with the USCG who has been in the USCG for 13.5 years. In his current role LCDR Cole serves in the Seventh District[1] Prevention Inspections and Investigations Branch.  In that role he serves as the central coordinator for all inspections and investigations conducted by the USCG, throughout the Seventh District. Prior to assuming that role, he served as the Supervisor of the Coast Guard Inspection Office in Riviera Beach, Florida, as an Investigations Officer in San Francisco, California,  a Marine Inspector in Houston, Texas, and a Deck Watch Officer on a USCG Cutter.

Before joining the USCG, and in his early years with the USCG, LCDR Cole worked in the scuba chartering business for three years. In that capacity, his responsibilities included being qualified as a divemaster, and assisting passengers, and teaching them basics during scuba charters. Through this work, LCDR Cole participated in approximately over 500 scuba ventures.

<u>Summary of Testimony/Opinion and Basis</u>: LCDR Cole will first describe his educational and professional background, focusing on his experience in scuba charters before joining the USCG and then, in the USCG, his experience as a marine inspector and a marine investigator. He will explain how that experience has led him to learn about, how to safety operate scuba charters, and industry standards surrounding scuba ventures.

LCDR Cole will next explain scuba diving mechanics generally for a paid passenger vessel. He will explain that standard practice is to depart and enter a vessel from the rear of the vessel,

---

[1] The USCG's Seventh District is the Southeast regional office and is the central command for the vast majority of USCG operations in Florida, Georgia, South Carolina, Puerto Rico, and the greater Caribbean Region.

near the propellers, because scuba divers handle heavy equipment. He will further explain that when passengers are approaching the vessel, the industry standard is for the captain to put the engines in neutral or turn them off completely to avoid the propeller activating near the passengers.

LCDR Cole will note that his experience relates primarily to "anchored dives" rather than "drift dives" like are employed in Palm Beach County. LCDR Cole will explain that there are certain nuances related to diving vessels in Palm Beach related to the heavy currents, but that the core principles remain the same.

LCDR Cole will next explain industry standards in operating a scuba charter business safely. He will explain that scuba charters should only operate at times when vessels are authorized to do so to ensure that they will be able to receive assistance as soon as possible if needed. He will explain that because of passengers' proximity to the propellers, it is industry practice for charter captains of scuba ventures to exercise particular care and attention to the engine and propeller system due to the danger it presents to their passengers. LCDR Cole will further explain that where a passenger has been injured by a propeller, the industry standard is for the charter captain to cease operations for that vessel until it has been thoroughly inspected, trouble shot, and its engines found to be operating properly. LCDR Cole will also testify that when a vessel has experienced a mechanical failure in its propulsion system, has an unintended grounding, or has a loss of life, then the vessel's owner or captain must report that incident to the USCG under 46 CFR Part 4. Moreover, LCDR Cole will explain that when a vessel has experienced a recent mechanical difficulty that presented a danger to passengers, the industry standard practice dictates warning later passengers of the potential issue so that they are aware of a potential risk they face while entering and exiting the vessel.

LCDR Cole will also discuss the reporting and drug testing requirements of 46 CFR Part 4. He will first explain what types of accidents are considered reportable marine casualties, when vessel operators must report such accidents, and why reporting is so important. He will then explain the post-casualty chemical testing requirements. This includes when these tests must be taken, the types of drug and alcohol tests that are required, and who is required to take them.

He will then explain the USCG drug testing requirements from 46 CFR Part 16. This primarily includes the requirement that all marine employers establish random drug testing programs to meet the requirements of the regulation. He will explain that to meet this requirement, operators employ the services of drug testing consortiums. He will explain what these consortiums are, the importance of this enrollment, and why it is paramount to maintaining a culture of safety.

Lastly, LCDR Cole will further discuss the requirements for vessels to have a Certificate of Documentation. He will explain the different types of classifications on a Certificate of Documentation including "Recreation" "Coastwise" and "Registry." He will explain why it is important for a vessel's certificate of documentation to accurately reflect the type of service that they are engaged in.

*Andrew Cole*, LCDR, MPE, USCG
LCDR Andrew Cole
USCG

[Remainder of Page Intentionally Left Blank]

3. **Paul D. Alber, Alber Consulting LLC**

<u>Training/Qualifications</u>: As set forth in his CV, which was produced to the defense on January 11, 2024, Mr. Alber has operated a consultancy that specializes in Global Positioning System ("GPS") data analysis and marine casualty investigations, with his typical duties involving responding to crash sites and extracting and analyzing GPS data contained on devices such as Garmins.

<u>Summary of Testimony/Opinion and Basis</u>: Mr. Alber will first explain his professional background and his work in mapping GPS data using location tracking and navigation devices, which encompasses both his work as a consultant since 2019 and his work as a Florida Police Department police officer since 2006, his roles at the National Association of State Boating Law Administrators since 2012, and his work as a Florida Fish and Wildlife Conservation Commission state law enforcement officer from 1993 through 2006, each of which (as more fully described in his CV) involved the analysis of GPS data.

After explaining his background, Mr. Alber will explain the GPS extraction that he performed in this case in a manner consistent with the expert reports produced to the defense on October 6, 2024, which are Bates labeled MCCABE_000979 through MCCABE_000993. *See* DE 19.

[Remainder of Page Intentionally Left Blank]

Having made this disclosure, the United States hereby reiterates a request for a written summary of expert testimony that the defense reasonably expects to offer at trial pursuant to Rules 702, 703, or 705 of the Federal Rules of Evidence, describing the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: January 11, 2025              By: /s/ Zachary A. Keller
                                    ZACHARY A. KELLER
                                    Assistant United States Attorney
                                    U.S. Attorney's Office – SDFL
                                    Court No: A5502767
                                    99 NE 4th Street, 6th Floor
                                    Miami, Florida 33132
                                    Tel: (305) 961-9023
                                    Email: zachary.keller@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Zachary A. Keller
Zachary A. Keller
Assistant United States Attorney