UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80103-CANNON

UNITED STATES OF AMERICA

v.

DUSTIN SEAN MCCABE,

      Defendant.
_____/

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE

The Government has filed its Motion in Limine and is seeking the following requested Rulings:

1. To present evidence about three events occurring on March 28, 2020, which was the day before the instant offense, that gave the Defendant notice of the propeller issue that proximately caused M.C.G.F.'s death;

2. To present evidence about the Defendant violating a local ordinance preventing vessels like his from taking out paying passengers the day of M.C.G.F.'s death;

3. To present evidence about the Defendant negligently failing to enroll in a narcotics testing program until after the outing that led to the victim's death;

4. To present evidence about the Defendant negligently failing to report the vessel's mechanical failure or its running aground on March 28 as required by regulation;

5. To present evidence about the Captain of the Port barring the Defendant from operating the vessel on April 9, 2020;

6. To present evidence about the Defendant's failure of a safety inspection less than a year before the March 29 incident, which tends to show his knowledge of the rules and an absence of mistake or accident in refitting this vessel himself; and

7. To preclude the Defense from referring to the State of Florida not prosecuting the Defendant for the March 29 incident that lies at the center of this case. These requested rulings are consistent with the FRE and essential for the jury to have the full information

needed to evaluate whether the Defendant was negligent on March 29 as charged.

The Defendant, **DUSTIN SEAN MCCABE** opposes each of these requested rulings except the seventh. The misguided legal argument that the Government advances in its motion are ripe for immediate resolution. A ruling from this Court will prevent any misunderstanding regarding the Defense's right to exclude the Government from presenting at trial, evidence irrelevant to the issue of the Defendant's negligence. As further demonstrated below, the Government's Motion in Limine should be denied.

**A. BACKGROUND**

The gravamen of the Indictment is Title 18, United States Code, Section 1115, which criminalizes the misconduct or negligence of a ship's officers that results in the death of another and for corporate management that knowingly and willfully causes or allows the misconduct or negligence of a ship's officers that result in the death of a person. [1]

Known as "seaman's manslaughter", the statutory language of § 1115 provides, in pertinent part, as follows:

> Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, chartered, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.
>
> When the owner or charterer of any steamboat or vessel is a corporation, any executive officer of such corporation, for the time being actually charged with the control and management of the operation, equipment, or navigation of such steamboat or vessel, who has knowingly and willfully caused or allowed such fraud, neglect, connivance, misconduct, or violation of law, by which the life of any person is destroyed, shall be

---

[1] See, United States v. O'Keefe, 426 F.3d 274, (5th Cir. 2005); United States v. Schroder, 2006 WL 1663663 (S.D.Ala.).

2

fined under this title or imprisoned not more than ten years, or both. Title 18 U.S.C. § 1115.

Much of the case law relating to this statute was created more than 150 years ago under its predecessor, which applied exclusively to steamships. Within the last ten years there has been a resurgence of prosecutions, forcing courts to re-examine what kind of conduct and what proof is required to sustain a conviction.[2] The purpose of this motion is to prevent prejudicial evidence that may unduly influence the jury and affect the fairness of the trial.

## ARGUMENT

The Government alleges that the first five of these requested rulings concern inextricably intertwined evidence necessary to complete the story of how the Defendant's negligence proximately caused M.C.G.F.'s death on March 29, 2020, while the sixth concerns evidence that is admissible under Federal Rule of Evidence ("FRE") 404(b).

The Defendant argues that the evidence should be excluded (1) as irrelevant under Rule 401, (2) as a prior bad act offered to show his propensity to commit the crime. Rule 404(b) prohibits the introduction of evidence of a crime, wrong, or other act to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). The evidence the Government seeks to enter is not probative of any issue except for sole purpose of demonstrating the Defendant's poor character and should therefore be excluded. United States v. Cannata, No. 17-15539 (11th Cir. Nov 07, 2019)

## OPPOSITION TO REQUEST 1

On March 28, 2021, the Government alleges that the Defendant was alerted to significant

---
[2] See, O'Keefe, 426 F.3d 274; Schroder, 2006 WL 1663663.

3

mechanical issues with his Vessel, particularly the propulsion system, through three incidents. The Defendant asserts that these incidents are inadmissible extrinsic evidence of prior bad acts under Federal Rule of Evidence 404(b).

- **First Incident:** A passenger, J.H., reported feeling pulled towards the port side propeller while holding onto the Vessel. Despite the Defendant claiming the engine was in neutral, J.H. insisted the propeller was engaged, resulting in her spear gun being sucked in and injuring her leg.

- **Second Incident:** During a second dive, the Vessel reportedly lost the ability to reverse. J.H. observed the port propeller engaging and notified the Defendant via Facebook, who cited prior issues with the port side.

- **Final Incident:** Following the outing, the Defendant allegedly encountered restricted maneuverability, resulting in a missed approach to the fuel dock and a near collision with the US1 bridge. Although the Defendant successfully avoided the bridge, the Vessel ended up grounding in the channel. After making mechanical adjustments, he was able to navigate back to the dock.

It would be error to allow the Government to admit any evidence referring to the propulsion system being the causation of the issues experienced on March 28 or March 29. The Government will be unable to prove proximate causation. Here, the Government's theory is that the jurors can easily find proximate causation based on the Defendant's negligent acts relating to the alleged propulsion system's malfunctions, failure to repair the propulsion issues, and failure to notify his passengers on March 29 of propulsion issues.

However, there is no evidence, no mechanical report from any investigation or review regarding the boat's engine or propulsion system that conclusively identifies the cause of the

4

vessel's mechanical failures following the incident on March 29. Investigators did not attempt to start the engine to ascertain whether the malfunction was related to the propulsion system or another issue entirely. Only photographs were taken of the vessel post-incident, and the Defendant was allowed to return the vessel to its original slip on the same day. Despite the absence of a thorough assessment of the vessel following the incident, the Government has reached a definitive conclusion—without conducting a proper investigation of the vessel itself—that the incident was attributable to a propulsion system issue. They intend to present evidence based on this assumption.

The Government failure to adequately inspect the boat, test the engine, or evaluate the propulsion system has led to an erroneous conclusion linking the March incident to propulsion issues. The Government has relied exclusively on the testimony of a single witness, neglecting to examine the vessel for propulsion-related concerns. In contrast, the Defendant intends to present testimony and evidence demonstrating that the encountered problems were not attributable to the propulsion system. Following reports of potential mechanical issues, the Defendant and his mechanic conducted a comprehensive inspection of the vessel prior to the March 29 incident and promptly addressed the identified problems, which, in fact, were unrelated to the propulsion system.

**OPPOSITION TO REQUEST 2**

The Government is requesting to present evidence about the Defendant violating a Palm Beach County emergency ordinance preventing vessels like his from taking out paying passengers the day of M.C.G.F.'s death.

This emergency ordinance was enacted in response to the Covid-19 pandemic. However,

the Defendant received explicit permission from the North Palm Beach Police to participate in fishing activities during this time, on the condition that the charter supplied essential goods, particularly food, to the local community. The Defendant, who held a valid saltwater fishing license, was permitted to continue fishing as long as he delivered essential items to residents in the area. A police officer was present at the docks, granting permission to local vessel owners who possessed the necessary license, allowing their boats to navigate through the region. No traffic was permitted in or out of the dock without authorization from the authorities. The Defendant was granted this allowance.

## OPPOSITION TO REQUEST 3

The Government is seeking to present evidence regarding the Defendant's failure to enroll in a drug testing program or to conduct drug testing after the incident, as mandated by law. However, any drug testing or enrollment that occurred after the incident is not relevant to determining whether the Defendant's negligence was a direct cause of M.C.G.F.'s death on March 29. The legal basis cited by the Government is found in the Code of Federal Regulations § 4.06-5, which outlines the Drug Testing Requirements for operating a vessel in navigable waters, stating:

1. Any individual engaged or employed on board a vessel who is determined to be directly involved in a serious marine incidents must provide a blood, breath, saliva, or urine specimen for chemical testing **when directed to do** so by the marine employer or a law enforcement officer.

In this instance, the Defendant was not detained; instead, he was instructed to return his vessel to its designated slip following the authorities' documentation of its condition through

photographs. At no point was he found to be directly involved in any significant marine incident, nor was he requested or required to provide a blood, breath, saliva, or urine sample for chemical testing by any marine employer or law enforcement officer. The obligation to enroll in a drug testing program or to undergo testing post-incident arises solely upon instruction from a marine employer or a law enforcement representative. Absent such a request, there is no requirement to pursue drug testing.

It would be error to allow the Government to present evidence about the Defendant's failure to enroll in a narcotics testing program prior to the incident that resulted in the victim's death, unless there is a legal requirement for him to do so. Nonetheless, the Defendant did engage a mobile drug testing company on the day of the incident after investigators did not mandate drug testing. The negative results from this drug test were submitted to the USCG.

## **OPPOSITION TO REQUEST 4**

The Government is requesting to present evidence about the Defendant failing to report the prior day's malfunctions to the USCG as required by law. Per the Code of Federal Regulations § 4.05-1 Notice of Marine Casualty, McCabe was only obligated to report the grounding or any mechanical problems is only mandatory when a vessel is involved in a marine casualty consisting in—

1. An unintended grounding, or an unintended strike of (allision with) a bridge;
2. An intended grounding, or an intended strike of a bridge, that creates a hazard to navigation, the environment, or the safety of a vessel, or that meets any criterion of paragraphs (a) (3) through (8);
3. A loss of main propulsion, primary steering, or any associated component or control system that reduces the maneuverability of the vessel;

7

4. An occurrence materially and adversely affecting the vessel's seaworthiness or fitness for service or route, including but not limited to fire, flooding, or failure of or damage to fixed fire-extinguishing systems, lifesaving equipment, auxiliary power-generating equipment, or bilge-pumping systems;

5. A loss of life;

6. An injury that requires professional medical treatment (treatment beyond first aid) and, if the person is engaged or employed on board a vessel in commercial service, that renders the individual unfit to perform his or her routine duties; or

7. An occurrence causing property-damage in excess of $75,000, this damage including the cost of labor and material to restore the property to its condition before the occurrence, but not including the cost of salvage, cleaning, gas-freeing, drydocking, or demurrage.

An occurrence involving significant harm to the environment as defined in § 4.03-65. None of these issues were present on March 28th, and the Defendants' vessel was not involved in any marine casualty that would trigger the required reporting to the U.S. Coast Guard. The vessel did not experience an accidental grounding, nor was there a deliberate grounding that posed a risk. It was entirely out of the channel and did not obstruct any marine traffic in any manner.

**OPPOSITION TO REQUEST 5**

The Government is requesting to present evidence about the Captain of the Port barring the Defendant from operating the vessel on April 9, 2020.

The Government claims that the port order was in place that prohibited the Defendant from operating his vessel, suggesting that the Defendant's assertion of his business being operational at the time he acquired the PPP Loan indicates his negligence and dishonesty

regarding Florida Scuba's operations. However, the port order did not effectively shut down the Defendant's business. The Defendant continued to work as a dive instructor, offering his services to individuals who hired him for guidance and instruction. While the Port Order restricted the operation of the boat, it did not terminate the business itself. The Defendant worked as a dive instructor to continue his operations, albeit in a modified way, due to the port order that prohibited him from operating his vessel.

**OPPOSITION TO REQUEST 6**

The Government request to present evidence about the Defendant's failure two unrelated annual inspections that occurred a year before the March 29 incident, which the Government alleges will show the Defendant's knowledge of the rules and an absence of mistake or accident in refitting this vessel himself.

Evidence concerning these inspections are not relevant as to whether the Defendant had knowledge the maritime rules and an absence of mistake or accident in refitting his vessel. Moreover, it argues evidence of these events is barred by FRE 404(a) and 404(b).

> Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes.
> (a) Character Evidence Generally.
>    Evidence of a person's character or a trait of character is not admissible for the purpose of proving acts in conformity therewith on a particular occasion.
> (b) (1) Evidence of other ...wrongs ... is not admissible to prove the character of a person in order to show action in conformity therewith.

The indictment does not charge the Defendant with any offenses connected to the refurbishment of the vessel in question. Furthermore, the alleged failed inspections do not relate

9

to the vessel involved in this case. A more suitable approach to showcase the Defendant's comprehension of the regulations would be to present the Defendant's licenses and credentials as evidence, instead of referencing a failed inspection of an entirely different vessel that occurred a year before the incident on March 29.

Under Rule 404(b), evidence of other crimes, wrongs, or acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). "Rule 404(b) is a rule of inclusion . . . [and] 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." Phaknikone, 605 F.3d at 1108 (quotation marks omitted).

The Courts have consistently employed the three-part Miller test, to determine if evidence of other acts is admissible if: (1) the evidence is "relevant to an issue other than the defendant's character"; (2) "as part of the relevance analysis, there [is] sufficient proof so that a jury could find that the defendant committed" the other acts; and (3) "the probative value of the evidence [is not] 'substantially outweighed by its undue prejudice, and the evidence . . . meet[s] the other requirements of Rule 403.'" Phaknikone, 605 F.3d at 1107 (quoting United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc)). Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The application of the Miller test "'varies depending on the issue for which it was offered.'" Phaknikone, 605 F.3d at 1108 (quoting United States v. Lail, 846 F.2d 1299, 1301 (11th Cir. 1988) (alteration omitted)). The basic test for deciding whether Rule 404(b) authorizes the admission of evidence of prior acts is well settled. In order to be admissible under Rule

404(b), the evidence of the defendant's prior bad acts must meet two criteria: 1) it must be relevant to some issue other than the defendant's character, and 2) its probative value must be greater than its potential to unfairly prejudice the jury. United States v. Beechum, 582 F.2d 898, 911 (5th Cir.1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

For instance, Rule 404(b) permits the prosecution to introduce evidence of a defendant's prior bad acts if that evidence tends to establish the defendant's knowledge or intent, or a particular modus operandi of the defendant. United States v. Brookins, 919 F.2d 281, 285 (5th Cir.1990). U.S. v. Gonzalez-Lira, 936 F.2d 184 (5th Cir. 1991). Put differently, the evidence must be sufficiently similar to "mark the offenses as the handiwork of the accused" and thus "demonstrate a modus operandi." Phaknikone, 605 F.3d at 1108 (quotation marks omitted); see also United States v. Whatley, 719 F.3d 1206, 1217-18 (11th Cir. 2013) (explaining that although the charged and uncharged bank robberies had similarities common to all bank robberies, they also shared "more unusual" similarities that "marked the crimes as the handiwork" of the defendant). The government's evidence must show more than "the fact that the defendant has committed the same 'commonplace variety of criminal act. Phaknikone, 605 F.3d at 1108 (quotation marks omitted)." United States v. Frazier, 21-12027 (11th Cir. Apr 06, 2022).

To determine whether the evidence is more probative than prejudicial, a district court must engage in a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Brown, 587 F.3d at 1091 (quotation marks omitted). The central inquiry is whether "the evidence is essential to obtain a conviction," or "the government can do without such evidence." United States v. Pollock, 926 F.2d 1044, 1049 (11th Cir. 1991).

Here, the Government should be precluded from introducing evidence regarding the Defendant's prior safety inspection failures that took place a year before the March 29 incident, on a different vessel than the one involved in these proceedings. The Government claims this evidence will demonstrate the Defendant's understanding of the regulations and suggest a lack of mistake or accident in his self-refitting of the current vessel. However, the evidence the Government is seeking to admit is not relevant to, and probative of, McCabe's knowledge of the marine and boating rules and regulations and any potential unfair prejudice cannot be mitigated by court limiting instructions.

As to the first prong of the Miller test, McCabe's previous failures to pass his vessel inspections on two separate occasions within a year of the March 29 incident is irrelevant to whether McCabe negligently operated the M/V SOUTHERN COMFORT (the "Vessel") as the as the captain and owner directly led to M.C.G.F.'s death that day. McCabe's operation of the Vessel on March 29 is not sufficiently similar to the failed inspections related to the refitting of an entirely different Vessel nor are the incidents sufficient similarity "to mark the offenses as the handiwork of the accused." See Miller, 959 F.2d at 1539.

The second prong of the Miller test remains unsatisfied. In terms of the relevance analysis, there is insufficient evidence for a jury to determine that the Defendant engaged in the alleged other acts. Moreover, the information regarding the failed inspections of a different vessel does not substantiate the conclusion that McCabe had prior knowledge of marine and boating regulations. These two failed inspections are not indicative of McCabe negligently operated the M/V SOUTHERN COMFORT (the "Vessel") on March 29.

Finally, as to the third prong, the probative value of the failed vessel inspections evidence is "substantially outweighed" by unfair prejudice. The two prior failed inspections have

probative value as to the primary contested issue at trial – whether Defendant Sean McCabe was negligent in his operation of the M/V SOUTHERN COMFORT as the captain and owner on March 29 and proximately caused M.C.G.F.'s death that day. Because the government lacks other strong evidence of McCabe's alleged negligence, the government's case rests almost exclusively on the testimony of one witness, J.H.

The evidence of the prior failed inspections is a prior bad act offered to show his propensity to commit the crime charged. The evidence is not relevant to whether McCabe had prior knowledge of marine and boating regulations. The evidence of the prior failed inspections is weak and it is not relevant to any issue aside from the Defendant's character. In sum, all three prongs of the Miller test are unsatisfied.

## **RELIEF REQUESTED**

For the foregoing reasons, the United States respectfully submits that the Court should deny to issue the requested evidence contained herein.

**TERRENCE O'SULLIVAN**
3810 Murrell Road #340
Rockledge, Florida 32955
321-422-2882 (office)
321-848-2144

**CALISHA A. FRANCIS**
3920 Woodside Drive #10
Coral Springs, Florida 33065
954-612-6126

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically noticed through the CM/ECF system to Zachary A. Keller, AUSA, and all other parties of record, on this 13th Day of January, 2025.

**TERRENCE O'SULLIVAN**
3810 Murrell Road #340
Rockledge, Florida 32955
321-422-2882 (office)
321-848-2144

*/s/ Terrence J. O'Sullivan, Esq.*
**TERRENCE J. O'SULLIVAN**
Attorney for the defendant
Florida Bar Number: 0644031
Terrence@TerrenceOSullivanLaw.com

**CALISHA A. FRANCIS**
3920 Woodside Drive #10
Coral Springs, Florida 33065
954-612-6126

*/s/ Calisha A. Francis, Esq.*
**CALISHA A. FRANCIS**
Attorney for the Defendant
Florida Bar Number: 96348
cthomlaw@aol.com