**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 24-80103-CR-CANNON**

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DUSTIN SEAN MCCABE,**

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**UNITED STATES' MOTION IN LIMINE**

**THIS CAUSE** comes before the Court upon the United States' Motion *in Limine* (the "Motion") [ECF No. 28]. Trial is set to begin in this matter on February 24, 2025 [ECF No. 26]. The Court has reviewed the Motion, Defendant's Response in Opposition [ECF No. 41] and the United States' Reply [ECF No. 43]. The Court also held a hearing on the Motion [ECF No. 44].[1] Following that review, and fully advised in the premises, the United States' Motion [ECF No. 28] is **GRANTED IN PART** and **DENIED IN PART**, in accordance with this Order.

\* \* \*

On August 22, 2024, a grand jury in the Southern District of Florida returned an indictment charging Defendant with one count of Seaman's Manslaughter, in violation 18 U.S.C. § 1115 (Count I); one count of False Statement within the Jurisdiction of an Agency of the United States, in violation of 18 U.S.C. § 1001(a)(2) (Count II); and three counts of Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts III–V) [ECF No. 3]. As alleged in the Indictment, Defendant lied to

---

[1] The transcript of this hearing is cited in this Order using the following convention: Tr. __.

the United States Coast Guard on paperwork submitted on March 5, 2020, regarding the use of his vessel, the M/C Southern Comfort ("Vessel") (Count 2); disregarded a malfunctioning propellor on his scuba diving vessel, resulting in the death of one of his passengers, M.C., on March 29, 2020 (Count 1); and then engaged in loan fraud by submitting fraudulent small business loan applications through the Paycheck Protection Program (Counts 3–5) [ECF No. 3].

In anticipation of trial, the United States moves for a pre-trial ruling on the admissibility of the following six categories of evidence:

- Evidence of three propellor-malfunction related events occurring on March 28, 2020, the day before the alleged manslaughter of M.C. as charged in Count 1;

- Evidence about Defendant violating a local ordinance preventing vessels like his from taking out paying passengers on the day of M.C.'s death, due to the COVID-19 pandemic;

- Evidence about Defendant negligently failing to enroll in a drug testing program until after the outing that led to M.C.'s death;

- Evidence about Defendant negligently failing to report the vessel's mechanical failure or its running aground on March 28, 2020, as required by a notice of marine casualty regulation codified at 46 C.F.R. § 4:05-1;

- Evidence about the Captain of the Port barring Defendant from operating the vessel on April 9, 2020, as reflected in a letter attached to the Motion [ECF No. 28-2];

- Evidence about the Defendant's failure of a safety inspection less than a year before the March 29 incident.

[ECF No. 28].[2]  The United States takes the position that the first five categories of evidence are substantive evidence pertinent to the charges and/or inextricably intertwined with the charged offenses, whereas the sixth category is permissible evidence of Defendant's knowledge and absence of mistake under Rule 404(b).   The Court addresses each in turn.

---

[2] There is a seventh category of evidence on which the parties agree: the "Defense may not refer to the State of Florida not prosecuting the Defendant for the March 29 incident that lies at the center of this case" (the Seaman's Manslaughter charge) [ECF No. 28 p. 2].   Defendant's Motion in Limine as to that subject is therefore **DENIED AS MOOT** [Tr. 68].

2

## DISCUSSION

**I.      March 28, 2020 Propellor-Related Events (Category 1)**

The United States seeks to admit evidence that another passenger, J.H., was injured by the propeller on Defendant's Vessel the day before the death of M.C. as charged in Count 1; saw the propeller malfunctioning; and subsequently sent Defendant a written message about it [ECF No. 28 p. 12]. The United States also seeks to admit testimonial evidence that, on that same day (March 28, 2020), Defendant "nearly allided with a bridge and ultimately grounded the Vessel due to its malfunctioning propulsion system" [ECF No. 28 p. 12]. As the United States explains, this evidence, to be introduced through the testimony of J.H. and two other witnesses, demonstrates Defendant's breach of duties on his Vessel and relates directly to the claimed negligence charged in Count 1 [ECF No. 28 p. 12; Tr. 31–35]. Defendant objects to admission of this evidence, classifying it as improper and irrelevant Rule 404(b) evidence, and generally challenging the reliability and verifiability of the witnesses' claims regarding the Vessel's propeller problems [ECF No. 41; Tr. 37–41]. In response to Defendant's 404(b) and relevance objections, the United States maintains that the evidence of events on March 28, 2020—within twenty-hours of M.C.'s death—is not subject to Rule 404(b), because it is direct evidence that Defendant was on notice of his malfunctioning propeller the day before the death of M.C. [ECF No. 28 p. 12; Tr. 29].

Generally, Rule 404(b) prevents the introduction of "evidence of any other crime, wrong, or act. . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). That said, character evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Ultimately, "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's

case." *United States v. Perez–Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994).

Evidence falls outside the scope of 404(b) altogether when it is not "extrinsic"—in other words, when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Baker*, 432 F.3d 1189, 1205 n. 9 (11th Cir. 2005) (quoting *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993)). "Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007); *see* Fed. R. Evid. 403 (permitting the Court to exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice).

For the reasons stated in open Court, the propeller-related evidence stemming from events on Defendant's Vessel on March 28, 2020—the day before the alleged manslaughter—is intrinsic evidence that goes directly to Defendant's alleged negligence and notice of the allegedly malfunctioning propeller as charged in Count 1 [Tr. 40]. As such, it is "necessary to complete the story of the crime" and "inextricably intertwined with the evidence regarding the charged offense." *Baker*, 432 F.3d at 1205. More specifically, according to the United States, another passenger on Defendant's boat was injured the day before M.C. died by the same propeller malfunction that led to M.C.'s death, and promptly informed Defendant of the problem [ECF No. 28 p. 4]. Defendant allegedly disregarded that warning, took passengers out on the Vessel the very next morning, and M.C. died as a result of propeller-related injuries. Under these circumstances, Defendant's objection fails; the evidence goes to the heart of the charge in Count 1 and is not unduly prejudicial within the meaning of Rule 403. Defendant's remaining challenges [Tr. 37–41] go to the weight

4

of the evidence, not its admissibility.   The United States' Motion is **GRANTED** on this issue.

## II.     March 29, 2020 Violation of Local Ordinances and Coast Guard Requirements (Categories 2 through 4)

The United States seeks to admit evidence that Defendant disregarded one local regulatory ordinance and three United States Coast Guard requirements on the day of M.C.'s death [ECF No. 28 p. 13].   These requirements include (1) the Palm Beach County COVID-19 Emergency Order [ECF No. 28-1], which Defendant allegedly violated by bringing passengers out on the Vessel; (2) 46 C.F.R. § 4:05-1, which Defendant allegedly violated by "fail[ing] to report the Vessel's mechanical failure and running aground from the day prior," March 28, 2020; and (3) 46 C.F.R. §§ 4.06-5 and 16.230(b), which Defendant allegedly violated by "fail[ing] to enroll [himself and his employees] in a drug testing program" [ECF No. 28 p. 15].   The Government argues that these regulatory violations should be admitted because they are both direct and circumstantial evidence of Defendant's negligence on the day of M.C.'s death [ECF No. 28 p. 15].

In response, Defendant argues that he did not violate any of these regulations, making evidence regarding such purported violations irrelevant and inadmissible [ECF No. 41 pp. 5–9]. More specifically, Defendant argues that (1) he received explicit permission from the North Palm Beach Police to participate in fishing activities during the COVID-19 timeframe so long as he supplied essential goods, particularly food, to the local community; (2) the drug testing requirement in 46 C.F.R. § 4.06-5 was not triggered because no marine or law enforcement official directed him to undergo a drug test (although he took one voluntarily and passed); and (3) he did not need to report anything to the Coast Guard on March 28, 2020, pursuant to 46 C.F.R. § 4:05-1, because he intentionally grounded the Vessel in a manner that did not create a hazard to

navigation [ECF No. 41 pp. 5–8].[3]

"References to regulations are improper if their purpose or effect is to suggest to the jury that it could find a defendant guilty by reason of his violation of the regulation." *United States v. Marti*, 294 F. App'x 439, 445–46 (11th Cir. 2008) (quoting *United States v. Jakeway*, 783 F. Supp. 590, 596 (M.D. Fla. 1992)). But "[i]f the evidence of civil violations is introduced for purposes other than to show criminal misapplication and the evidence is not presented in such a way that the jury's attention is focused on the civil violations rather than the criminal ones, there is no error." *United States v. Stefan*, 784 F.2d 1093, 1098 (11th Cir. 1986). The Eleventh Circuit has upheld the introduction of civil regulatory violations when the jury is aware, through presentation, a limiting jury instruction, or both, that the defendant "could not be convicted solely on the basis of his failure to" adhere to regulatory requirements. *Marti*, 294 F. App'x at 446; *Stefan*, 784 F.2d at 1098 (holding that "the district court made it clear that the jury did not have to infer criminal intent to misapply funds (the charged crime) because of section 84 infractions (the regulatory offense)").

As to the alleged violation of the Palm Beach COVID-19 Emergency Order, the Court agrees with Defendant and finds it irrelevant and therefore inadmissible, as stated in open court [Tr. 45–47; ECF No. 28-1]. The Court understands the United States' but-for causation argument that M.C. would not have been on Defendant's Vessel on March 29, 2020, had Defendant abided by the COVID-19 Order prohibiting recreational boating [ECF No. 28-1; Tr. 42, 45]. That is true as a matter of pure causation. But Defendant's disregard of a state COVID-19 order barring

---

[3] As referenced below, Defendant made one additional argument in open court against admission of alleged violations of the random drug testing protocol. Defendant argued that his employees, advised by their attorneys, would not submit to drug testing on the day of M.C.'s death and that Defendant himself sought out a drug test, which he passed, directly after the incident [Tr. 49].

certain recreational vessels from navigating due to a global pandemic is not probative of Defendant's ability to maintain his Vessel in a safe condition for his scuba-diving customer M.C., as charged in Count 1 [Tr. 41, 46].

On the other hand, as stated in open court [Tr. 57], and for similar reasons as set forth above in reference to Category 1, the Court agrees with the United States that Defendant's alleged violation of 46 C.F.R. § 4:05-1 for "fail[ing] to report the Vessel's mechanical failure and running aground from the day prior" to M.C.'s death on the Vessel is relevant and admissible as inextricably intertwined evidence of the charge in Count 1 [ECF No. 28 p. 15]. Defendant argues that the regulation's reporting requirements were not triggered [ECF No. 41 p. 8; Tr. 55], but that challenge speaks to the weight of the evidence, not its threshold admissibility. The Court will issue a limiting instruction as appropriate, and Defendant may present argument and/or contrary evidence on this issue through cross-examination or additional evidence.

Third, the United States seeks to admit Defendant's violations of 46 C.F.R. §§ 4.06-5 and 16.230(b) by "fail[ing] to enroll in a drug testing program" to illustrate Defendant's general disregard for marine regulations [ECF No. 28 p. 15]. Defendant maintains that the drug testing requirement did not apply to him prior to March 29, 2020, because such a requirement is triggered only upon direct involvement in a "serious marine incident," which he disputes, followed by a law enforcement or marine employer's directive to submit to drug testing, which he never received [ECF No. 41 p. 6 (citing 46 C.F.R. § 4.06-5)]. With respect to 46 C.F.R. § 16.230(b), Defendant argued at the hearing that he did not need to register his employees for random drug testing because his crewmembers were subject to drug testing through other employment as EMTs and firefighters [Tr. 50]. *See* 46 C.F.R. § 16.230(b) (requiring "marine employers" to "establish programs for the chemical testing for dangerous drugs on a random basis of crewmembers on uninspected vessels"

7

under certain circumstances, including where such crewmembers "[p]erform duties and functions directly related to the safe operation of the vessel" or are "assigned the duties of warning, mustering, assembling, assisting, or controlling the movement of passengers during emergencies"). Defendant also generally challenges the drug-testing regulatory evidence as irrelevant to the asserted negligence on March 29, 2020, and as unduly prejudicial.

Based on the Court's independent analysis of the cited regulations and the parties' arguments, the Court denies the United States' Motion on this drug-testing regulatory issue, subject to revisiting this matter at trial if timely raised by the United States following additional evidence and/or argument. The first regulation at issue, 46 C.F.R. § 4.06-5, does not impose an unqualified, affirmative obligation on Defendant to enroll in drug testing, as the Government suggests [ECF No. 28 p. 15]. Section 4.06-5 requires drug testing "when directed to do so by the marine employer or law enforcement officer." 46 C.F.R. § 4.06-5. Defendant was never directed to submit to a drug test, although he took a drug test voluntarily the same day of the incident and tested negative [Tr. 51]. Therefore, it is not evident that § 4.06-5 applies to Defendant, making evidence concerning Defendant's purported violation of that regulation irrelevant and distracting to the jury. The other regulation on which the United States relies is 46 C.F.R. § 16.230(b), which requires "marine employers" like Defendant to establish a random drug-testing program for crewmembers under certain circumstances. This regulation does appear to apply to Defendant, although that conclusion is not entirely clear.[4] Even so, the United States presents no evidence

---

[4] The drug-testing program in section 16.230(b) applies to four categories of crewmembers. The United States does not indicate under which prong, or prongs, Defendant's crewmembers fall, and the record does not reveal any additional information regarding the crewmembers or their functions on Defendant's Vessel. *See* 46 C.F.R. § 16.230 ("Marine employers must establish programs for the chemical testing for dangerous drugs on a random basis of crewmembers on uninspected vessels who: (1) Are required by law or regulation to hold a credential issued by the Coast Guard in order to perform their duties on the vessel; (2) Perform duties and functions directly related to

that either Defendant or his crewmembers were under the influence of drugs on the date in question or were suspected to be under the influence. Nor is the negligence asserted in Count 1—which relates to Defendant's allegedly negligent maintenance and operation of the propulsion mechanism on his Vessel—appear to have any connection to drug use of any kind. Under these circumstances, the record lacks sufficient information from which to conclude that the evidence regarding Defendant's failure to randomly drug test his employees is relevant to the negligent conduct charged in Count 1. Although in a very broad sense, any violation by Defendant of any marine regulation could be seen as relevant to Defendant's general duties as operator of his Vessel, that theory of relevance—and the evidentiary decisions that flow from it—is too attenuated from the negligence charged in Count 1 to permit a pretrial ruling on admissibility at this stage. Nor can the Court discern with confidence that admission of this evidence will not, as Defendant suggests, create a material risk of undue prejudice to Defendant by focusing the jury on a civil infraction related to drug-testing rather than on the negligent conduct charged in Count 1. *See* Fed. R. Evid. 403. The Court therefore **GRANTS IN PART** and **DENIES IN PART** the United States' Motion as to Categories 2 through 4 in the Motion, although the United States may revisit the drug-testing issue through additional, focused argument prior to trial or during trial. The Court also notes that the United States has not offered any authority in which drug-testing evidence of the sort offered in Category 4 has been admitted in a criminal case absent some discernable connection between the alleged criminal negligence and the suspected use of drugs.

---

the safe operation of the vessel; (3) Perform the duties and functions of patrolmen or watchmen required by this chapter; or, (4) Are specifically assigned the duties of warning, mustering, assembling, assisting, or controlling the movement of passengers during emergencies.").

9

### III. Port Captain's April 9, 2020 Order to Cease Operating Florida Scuba (Category 5)

The United States seeks to admit evidence that the Coast Guard Captain of the Port issued an order on April 9, 2020, barring Defendant from "operating . . . [the] vessel with passengers for hire . . . [because it] represents a significant unsafe condition and environmental threat to the port" [ECF No. 28 pp. 7, 16; *see* ECF No. 28-2]. The Caption of the Port Order also contains references about Defendant's Vessel not being registered properly, as relevant to Count 2 [ECF No. 28-2]. According to the United States, this evidence is relevant for two reasons: first, it demonstrates Defendant's negligence on the day of M.C.'s death, as evidenced by the Coast Guard's finding of unsafe conditions and decision to forbid continued operation of the Vessel; and second, it goes directly to the wire fraud counts, given the importance of proving that Defendant lied on his PPP loan applications when he claimed that his company, Florida Scuba, was in operation [ECF No. 28 p. 16; Tr. 58]. In response, Defendant argues that the Order "did not terminate the business itself" because "Defendant continued to work as a dive instructor" [ECF No. 41 p. 9; *see* Tr. 59–60]. He also suggests that there are less prejudicial forms of evidence at the Government's disposal to show that Defendant's business was not operating [Tr. 60].

Upon review, the Court will permit the United States to introduce the Captain of the Port Order in redacted form, removing any reference in the letter (or in supporting testimony) to a finding that Defendant's operation of the vessel represents a significant unsafe condition. That segment of the letter, while probative of Defendant's negligence, is unduly prejudicial because it operates essentially as a conclusive finding by a government authority of the very negligence charged in Count 1. *See* Fed. R. Evid. 403. The balance of the Port Order is acceptable evidence of the status of Defendant's business in Count 2 and is directly relevant to the fraud counts in Counts 3 through 5. The Government's Motion to introduce the April 9, 2020 Order is therefore

**GRANTED IN PART**, consistent with this Order

  IV.  **April 2019 Inspection Report (Category 6)**

  Finally, the United States seeks to admit an April 2019 Inspection Report that chronicles regulatory deficiencies on Defendant's prior vessel a year before the manslaughter incident. This evidence, the United States argues, illustrates Defendant's "knowledge of the safety expectations that attend owning and captaining a vessel and his absence of mistake or accident in violating them," pursuant to Rule 404(b) [ECF No. 28 p. 17; Tr. 61; ECF No. 28-3]. Defendant objects to introduction of this evidence, classifying it as irrelevant and impermissible character evidence barred by Rule 404 [ECF No. 41 p. 12]. Fed. R. Evid. 404. More specifically, Defendant argues, the Inspection Report evaluates a different boat altogether than the Vessel in question and identifies different deficiencies from the ones that ultimately led to M.C.'s death [Tr. 65].

  As discussed above, Rule 404 prohibits "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). However, such evidence can be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

  The Court concludes that the April 2019 Inspection Report, even introduced for the explicit purpose of demonstrating Defendant's "knowledge of the safety expectations that attend owning and captaining a vessel and his absence of mistake or accident in violating them," is inadmissible under 404(b)(2) because it corresponds to a different vessel as relevant to Count 1 [ECF No. 28 p. 17]. The United States may present evidence of Defendant's knowledge of safety regulations through other means, including by eliciting general testimony regarding Defendant's participation in prior safety inspections. The Government's Motion to introduce the April 2019 inspection

report as Rule 404(b) evidence is **DENIED** in accordance with this Order.[5]

## CONCLUSION

It is **ORDERED AND ADJUDGED** that the United States' Motion in Limine [ECF No. 28] is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.

**ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of February 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[5] The Court also notes that the April 2019 inspection report shows Defendant passing most of the inspection categories on the other vessel [Tr. 66–67].