UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | CASE: 9:24-cr-80103-AMC-1 |
| V. | |
| DUSTIN SEAN MCCABE<br>    Defendant. | |
| _____/ | |

## DEFENDANT DUSTIN SEAN MCCABES' RULE 29 MOTION FOR JUDGMENT OF AQUITTAL

**COMES NOW**, Defendant Dustin Sean McCabe, through his attorneys of record Terrence J. O'Sullivan and Calisha A. Francis, and pursuant to Federal Rule of Criminal Procedure 29(a), hereby moves this Honorable Court for Judgment of Acquittal as to all counts against him as the Government has not introduced sufficient evidence for a reasonable jury to find each element of the charged offenses beyond a reasonable doubt. This motion is based upon the attached memorandum and authorities, all files and records in this case, and such evidence and argument as may be presented at the hearing on the motion.

### INTRODUCTION

On August 22, 2024, Mr. McCabe was indicted with five criminal counts in the United States District Court in the Southern District of Florida. Count 1 accused Mr. McCabe of seaman's manslaughter, in violation of Title 18, United States Code, Section 1115. Count 2 charged Mr. McCabe with making a false statement to a federal agency, in violation of Title 18, United States Code, Section 1001(a)(2). Counts 3, 4, and 5 alleged that Mr. McCabe committed wire fraud.

This motion is based on the following grounds:

1. The denial of the Defendant's motion to sever the charges, which prejudiced the Defendant's right to a fair trial.
2. The spoilage of key evidence, specifically the unavailability of the vessel for inspection.
3. Exclusion of Decedent's Positive Drug Test,
4. The Evidence Presented at Trial was insufficient to Sustain a Conviction that requires a finding of Fraud.

## ARGUMENT

The charges against Mr. McCabe stem from his operation of the vessel M/V SOUTHERN on March 29, 2020, during a scuba diving excursion in Palm Beach County, which included a passenger, M.C.G.F. The Government alleged, and presented insufficient evidence at trial, that Mr. McCabe's negligence contributed to the tragic drowning of M.C.G.F., reportedly resulting from injuries inflicted by the boat's propeller. Additionally, the Government claimed that following M.C.G.F.'s death, Mr. McCabe applied for two Paycheck Protection Program (PPP) loans and sought forgiveness for both. They further asserted that Mr. McCabe's loan and forgiveness applications contained significant misrepresentations regarding his business's monthly payroll and employee count.

   I.   **Denial of Motion to Sever**

The Defendant previously filed a motion to sever the charges of seamen's manslaughter, wire fraud, and false statements. The court's denial of this motion significantly prejudiced the Defendant's right to a fair trial. The joinder of these charges confused the jury and blurred the

distinct elements required for each offense. The jury's ability to impartially evaluate each charge on its own merits has been compromised.

The Defense articulated its arguments and presented compelling evidence during the trial, highlighting the following key points:

1. The charges of manslaughter, false statements, and financial fraud pertain to entirely distinct and unrelated victims.
2. The assertion that Mr. McCabe knowingly submitted fraudulent representations to various banks and agencies regarding financial matters, including loans, lacks any logical connection to the charge of Seaman's Manslaughter.
3. Informing the jury of Mr. McCabe's involvement in four additional fraud-related offenses, in conjunction with the charge of Seaman's Manslaughter, had a significant prejudicial effect. Furthermore, disclosing to the jury that Mr. McCabe financially benefited from the government following the death of M.C.G.F considerably undermined his right to a fair trial.

## **MEMORADUM OF LAW**

In *United States v. Booker*, 334 F.3d 406, 415 (5th Cir. 2003) the Court ruled that the initial determination of whether joinder of charges is improper under Rule 8 of the Federal Rules of Criminal Procedure is judged according to the allegations in the superseding indictment. *See United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988).

Specifically, Rule 8(a) provides that:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan. *United*

    *States v. Butler*, No. 04-10364 (Fed. 5th Cir. 10/24/2005), No. 04-10364.
    (5th Cir. Oct 24, 2005).

 Under Rule 8 of the Federal Rules of Criminal Procedure two or more offenses may be charged in the same indictment or information if the charges are of the same or similar character, are based upon the same act or transaction, or on two or more acts connected together or constituting parts of a common scheme or plan.

 It is the government's burden to show that the initial joinder is proper under Rule 8. *United States v. Davis,* supra. But the question of whether the initial joinder is proper under Rule 8 is to be determined before trial by an examination by the trial court of the allegations stated on the face of the indictment. *United States v. Weaver*, 905 F.2d 1466 (11th Cir. 1990). *United States v. Morales*, 868 F.2d 1562 (11th Cir. 1989). Court has repeatedly said that whether joinder is proper under Rule 8 is to be determined by examining the allegations in the indictment alone. See, e.g., United States v. Morales, 868 F.2d 1562, 1567- 68 (11th Cir. 1989).

 At trial, the government clearly failed to meet this burden. Mr. McCabe was charged with Seaman's Manslaughter and a totally separate financial fraud crime with totally separate and individual victims. These offenses are not of the same or similar character. They are not based upon the same acts or transactions, nor common scheme or plan. Clearly, under Rule 8, joinder would be highly prejudicial and erroneous. While courts have some flexibility in the interpretation of "transaction," there is a limit. "[I]t is the 'logical relationship' between the acts alleged, coupled with 'a large area of overlapping proof,' that allows them to be seen as 'the same act or transaction.' *U.S. v. Salyer*, No. CR S-10-061 LKK, 2011 WL 6153204, at *4 (E.D. Cal. Dec. 12, 2011).

None of these claims arose out of and were connected to the same general fraudulent scheme. There is no "explicit connection between the groups of charges," that there exists no need to look outside "the four corners of the indictment." *United States v. Annamalai*, 939 F.3d 1216 (11th Cir. 2019) *United States v. Souffrant*, D. C. Docket No. 1:09-cr-20407-PCH-1, D. C. Docket No. 1:09-cr-20407-PCH-2, No. 10-11579 (11th Cir. Apr 23, 2013).

Count 1 of the Indictment, in its entirety, alleges how Mr. McCabe, on or about March 20th 2020, by his misconduct, negligence, and inattention to his duties as the owner and charterer of the vessel M/V SOUTHERN COMFORT, by his fraud, neglect, connivance, misconduct, and violation of law on said vessel, caused the life of M.C.G.F. to be destroyed, in violation of Title 18, United States Code, Section 1115.

Meanwhile, in Count 2 of the Indictment, the Government charged Mr. McCabe with knowingly and willfully making false, fictitious, and fraudulent statements regarding material facts. Specifically, on or about March 5, 2020, the Government alleges that the defendant falsely represented to an employee of the Department of Homeland Security, United States Coast Guard, that he would use his vessel solely for recreational purposes, in violation of Title 18, United States Code, Section 1001(a)(2).

Counts 3-5 asserted that Mr. McCabe knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343. The Indictment further alleges that the

aim of this scheme was for the defendant to unlawfully enrich himself by: (a) submitting fraudulent loan applications for assistance through the SBA, intended to mitigate the economic impact of the COVID-19 pandemic, including PPP loans; (b) diverting the proceeds from the fraud for personal use to sustain the scheme; and (c) making false statements on PPP loan forgiveness applications to ensure that Mr. McCabe's loans would be forgiven.

However, the evidence presented at trial failed to clearly sets forth an alleged common scheme that connects the Defendant's negligence, which the Government claims directly led to M.C.G.F.'s death on March 29, 2020, with the alleged false statement made by Mr. McCabe on March 5, 2020 in which he claimed he would use his vessel solely for recreational purposes. Additionally, the evidence presented by the Government failed to connect this with the wire fraud charges against Mr. McCabe, which include: (a) submitting fraudulent loan applications for assistance through the SBA, intended to alleviate the economic effects of the COVID-19 pandemic, including PPP loans; (b) misappropriating the proceeds from the fraud for personal use to sustain the scheme; and (c) providing false information on PPP loan forgiveness applications to ensure that Mr. McCabe's loans would be forgiven. In the Indictment, on its face, the government illogically intertwines the Manslaughter Count with the Fraud Counts.

Courts determine whether joinder is proper by looking at "the allegations stated on the face of the indictment," *United States v. Weaver* , 905 F.2d 1466, 1476 (11th Cir. 1990). In this case, The government incorrectly argued that all five counts were part of a common scheme or plan under Rule 8(a). That belief, however, is based on a misunderstanding of the law.

First, Rule 8 joinder was improper here because the five counts are NOT part of "a common scheme or plan." Fed. R. Crim. P. 8(a).  The Seaman's Manslaughter charge alleged in Count 1,

had nothing to do with the False Statement charge alleged in Count 2 or the wire fraud charges alleged in Counts 3-5.

The Government failed to present any evidence of a criminal act that was alleged in Count 1 and 2 of the indictment were "part and parcel" of the fraudulent scheme, in particular its wire fraud aspect alleged in Counts 3-5. Federal Rules of Criminal Procedure 8(a) and 14(a) permits the joinder of offenses where they "are of the same or similar character . . . , or are connected with or constitute parts of a common scheme or plan." *Fed. R. Civ. P. 8(a)*. Courts have undertaken a two-step analysis to determine whether separate charges are properly tried together, looking to the face of the indictment.

To sustain a conviction for wire fraud, the government must prove that: "(1) a scheme to defraud exists, (2) the defendant used wire communications in interstate or foreign commerce to further that scheme, and (3) the defendant had specific intent to defraud." *United States v. Davis*, 53 F.4th 833, 842 (5th Cir. 2016) "A defendant 'acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself.'" *United States v. Swenson*, 25 F.4th 309, 318-19 (5th Cir. 2022).

The Government presented insufficient evidence in support of Counts 3-5 and alleged that Mr. McCabe defrauded the United States by (a) submitting fraudulent loan applications for assistance through the Small Business Administration (SBA) intended to mitigate the economic impact of the COVID-19 pandemic, including Paycheck Protection Program (PPP) loans; (b) misappropriating the proceeds from this fraud for personal gain to perpetuate the scheme; and (c) providing false information on PPP loan forgiveness applications to ensure that his loans would be forgiven.

Importantly, these counts do not allege any fraud, misconduct, or negligence that resulted in the death of M.C.G.F., (Count 1) nor do they reference any false statements made to the United States Coast Guard or any other agency (Count 2). The allegations in Counts 3-5 center solely on the claim that it is fraudulent for individuals to attempt to improperly obtain and utilize PPP loan assistance. Thus, any alleged false statements made by Mr. McCabe in regarding the intended use of his vessel, as well as any alleged negligent actions that occurred on the Vessel on March 29, 2021 are irrelevant to the Wire Fraud counts.

There is no explicit connection between the groups of charges. Seaman's Manslaughter, False Statements, and Wire fraud charges are not of the "same or similar character." Nor do the charged offenses appear to be "based on the same act or transaction." The counts containing the Seaman's Manslaughter and False Statement charges make no reference to the counts containing the wire fraud charges. Rule 14(a) of the Federal Rules of Criminal Procedure allows a Court to mandate separate trials of counts if joinder appears to prejudice either the defendant or the government. "Even if joinder is proper . . . the court still has discretion to sever under Rule 14." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). There is a presumption against severance, but that presumption was 6overcome here.

The Seaman's Manslaughter charge against Mr. McCabe was uniquely inflammatory and prejudicial which, in turn, made Mr. McCabe's Motion to Sever unique. The kind of evidence the jury dealt with in the manslaughter-related charges unfairly warped the way the jury assessed the wire fraud and false statement charges. The jury needed to view the charges and elements independently Further, the three types of charges are not of the same or similar character – they are not the same type of offense, and most evidence does not overlap. See United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999).

II. **Spoilage of Evidence**

The vessel, which is central to the charge of seamen's manslaughter, was no longer available for inspection at the time of trial nor in the discovery phase of the case. This constitutes spoilage of evidence, denying the Defendant the opportunity to independently verify the government's claims. The defense's ability to challenge the government's assertion that the boat malfunctioned due to a propulsion issue was severely hindered. Without the vessel, the defense could not conduct its own examination or present evidence to counter the government's claims. This spoilage of evidence was a critical issue that undermined the fairness of the trial. The inability to inspect the vessel placed the Defendant at an insurmountable disadvantage, violating the principles of justice and due process.

The Government was permitted to present evidence that Mr. McCabe was alerted to significant mechanical issues with his Vessel, particularly the propulsion system, through three incidents.

a) First Incident: A passenger, J.H., reported feeling pulled towards the port side propeller while holding onto the Vessel. Despite the Defendant claiming the engine was in neutral, J.H. insisted the propeller was engaged, resulting in her spear gun being sucked in and injuring her leg.

b) Second Incident: During a second dive, the Vessel reportedly lost the ability to reverse. J.H. observed the port propeller engaging and notified the Defendant via Facebook, who cited prior issues with the port side.

c) Final Incident: Following the outing, the Defendant allegedly encountered restricted maneuverability, resulting in a missed approach to the fuel dock and a near collision with the US1 bridge. Although the Defendant successfully avoided the bridge, the Vessel

ended up grounding in the channel. After making mechanical adjustments, he was able to navigate back to the dock.

The Government should not have been permitted to admit any evidence referring to the propulsion system being the cause of the issues experienced on March 28 or March 29. The evidence presented by the Government was insufficient to prove proximate causation. The Government at trial asserted that the Defendant committed negligent acts relating to the alleged propulsion system's malfunctions, failure to repair the propulsion issues, and failure to notify his passengers on March 29 of propulsion issues.

However, the Government failed to present any evidence from any investigation or review regarding the boat's engine or propulsion system that conclusively identifies the cause of the vessel's mechanical failures following the incident on March 29. Investigators did not attempt to start the engine to ascertain whether the malfunction was related to the propulsion system or another issue entirely. Despite the absence of a thorough assessment of the vessel following the incident, the Government was able to present evidence that lead to a definitive conclusion— without conducting a proper investigation of the vessel itself—that the incident was attributable to a propulsion system issue. They presented evidence based on this assumption.

The Government's failure to adequately inspect the boat, test the engine, or evaluate the propulsion system has led to an erroneous conclusion linking the March incident to propulsion issues. The Government has relied exclusively on the testimony of a single witness, neglecting to examine the vessel for propulsion-related concerns. In contrast, the Defendant presented testimony and evidence demonstrating that the problems encountered were not attributable to the propulsion system. Following reports of potential mechanical issues, multiple witnessed testified that the Defendant and his mechanic conducted a comprehensive inspection of the vessel prior to the March

29 incident and promptly addressed the identified problems, which, in fact, were unrelated to the propulsion system.

### III. Exclusion of Decedent's Toxicology Results

The failure to include the decedent's toxicology reports as evidence in the trial critically undermined the Defendant's case. This omission affected the trial's fairness and the integrity of the verdict.

The decedent's toxicology test results were crucial to understanding the circumstances surrounding the incident. It would have helped to provide the jury with alternative explanations for the decedent's actions, which are essential for a fair evaluation of the seamen's manslaughter charge.

The exclusion of this evidence prevented the defense from presenting a complete narrative that might challenge the Government's claims regarding causation and responsibility. The Defendant was deprived of the opportunity to argue that the decedent's impairment potentially contributed to the incident, thereby affecting the determination of negligence or culpability.

Previous Court rulings have emphasized the necessity of including all relevant evidence to ensure a comprehensive and fair trial process. Excluding pertinent evidence that could affect the outcome contravenes established legal principles and the defendant's right to a fair trial.

### IV. The Evidence Presented at Trial was insufficient to Sustain a Conviction that requires a finding of Fraud.

Counts 3, 4, and 5 require a finding of fraud, and the evidence is insufficient to sustain a conviction that requires a finding of fraud. At most, the evidence presented supported

deception, but that is not enough—defrauding requires more. Defrauding requires an injury to the victim, and the victim here—for both counts—is the IRS. This law is clear in the Eleventh Circuit:

> There is a difference between deceiving and defrauding: to defraud, one must intend to use deception to cause some injury; but one can deceive without intending to harm at all. Thus, deceiving is a necessary condition of defrauding but not a sufficient one. Put another way, one who defrauds always deceives, but one can deceive without defrauding. For this reason, the law in the Eleventh Circuit makes clear that a defendant "schemes to defraud" only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching. But if a defendant does not intend to harm the victim—"to obtain, by deceptive means, something to which [the defendant] is not entitled"—then he has not intended to defraud the victim.

*United States v. Takhalov*, 827 F.3d 1307, 1312-1313 (11th Cir. 2016), as revised(Oct. 3, 2016), opinion modified on denial of reh'g, 838 F.3d 1168.

Here, the IRS has not been defrauded out of anything. The false claims allegations did not result in any loss to the United States, as proven at trial and admitted by government witnesses. Therefore, under *Takhalov*, even if deception was proven, the IRS was not defrauded. Even if there were some loss (which there was not), a link between the fraud and the loss must be proven. Here, however, even if there were any established deception, it "was not shown to be capable of affecting the [IRS's] understanding of the [transactions]," *Takhalov*, 827 F.3d at 1314, and there was no evidence the IRS did not understand the any information provided to the IRS. Thus, "no injury was shown to flow from [any] deception." Id. (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970)). Judgment of Acquittal should thus be entered.

Furthermore, the Government submitted inaccurate tax forms, falsely asserting that they were the correct and legitimate documents provided by the Defendant. In response, the Defendant presented testimony and evidence showing that the Government displayed the incorrect form to

the jurors as proof, while misleadingly claiming it was used to secure the Paycheck Protection Program Loan. This assertion is unequivocally false. The Defendant suffered prejudice due to the Government's introduction of this erroneous document as evidence.

The ramifications of this misstep are substantial, as it undermines the integrity of the proceedings and calls into question the fairness of the trial. The Defendant's legal team contended that this error not only misled the jury but also damaged the Defendant's reputation, potentially swaying the verdict.

V. **Conclusion**

For the foregoing reasons, and for all the reasons set out in the Motion, Mr. McCabe respectfully moves the Court for a Judgment of Acquittal.

Respectfully submitted,

**TERRENCE O'SULLIVAN**
3810 Murrell Road #340
Rockledge, Florida 32955
321-422-2882 (office)
321-848-2144

Dated: January 30, 2025

*/s/ Terrence J. O'Sullivan, Esq.*
**TERRENCE J. O'SULLIVAN**
Attorney for Mr. McCabe
Florida Bar Number: 0644031
Terrence@TerrenceOSullivanLaw.com

**CALISHA A. FRANCIS**
3920 Woodside Drive #10
Coral Springs, Florida 33065
954-612-6126

*/s/ Calisha A. Francis, Esq.*
**CALISHA A. FRANCIS**
Attorney for Mr. McCabe
Florida Bar Number: 96348
cthomlaw@aol.com