# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,        CASE: 9:24-cr-80103-AMC-1
Plaintiff,

V.

DUSTIN SEAN MCCABE
Defendant.

_____/

## DEFENDANT DUSTIN SEAN MCCABES' RESPONSE TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL

**COMES NOW**, Defendant Dustin Sean McCabe, through his attorneys of record Terrence J. O'Sullivan and Calisha A. Francis, respectfully submits this reply to the Government's Opposition (ECF No. 372) in further support of his Motion for Judgment of Acquittal.

## I.    INTRODUCTION

1. At trial, the Government fluctuated between various scenarios but ultimately failed to meet its burden of proof. The Government has only demonstrated that the incident in question was a tragic accident, rather than a result of any criminal behavior or negligence on the part of Mr. McCabe.

2. During the proceedings, Mr. McCabe testified that in March 2020, he relocated to his boat, the Southern Comfort, ensuring its safety and functionality through extensive refitting and upgrades. With 41 years of sailing experience and no prior incidents, he has proven himself to be a competent and responsible mariner.

3. On the morning of March 28th, as with every trip, Mr. McCabe stated that he thoroughly prepared the vessel. He conducted safety briefings, which he has delivered hundreds of

times, ensured that all waivers were signed and provided a guided experience for the divers. The conditions that day were typical; he had navigated them safely on numerous occasions.

4. The Government presented testimony from Jennifer Hester, who experienced an incident with her spear gun that led her to believe there might be an issue with the boat's propellers. The Government sought to convict Mr. McCabe largely based on her testimony, which constitutes the foundation of their case.

5. The Government's case heavily depended on the accounts of Jennifer Hester and the investigators who testified about their interviews with her, none of whom had firsthand knowledge of the incident. Notably, none of the investigators attempted to start the boat or inspect the propellers to verify Ms. Hester's claims.

6. Ms. Hester testified that she is not a mechanic and has never worked on boats. However, she mentioned that she had gone diving with Mr. McCabe at least 50 times and had even participated in a second dive on the same day with the same boat and captain, despite expressing concerns about potential issues. This illustrates her trust in Mr. McCabe's ability to ensure a safe charter.

7. During her testimony, Ms. Hester recounted an incident in which her spear gun was drawn into the propellers and then shot back out at her, bending the shaft. Mr. McCabe clarified that, based on his extensive spear fishing experience, a spear gun can easily become bent from shooting a fish or striking a reef. He testified that the shaft of the gun was bent between the rudder and the hull. It is crucial to remember that the Government must prove its theory beyond a reasonable doubt. The situation described by Ms. Hester does not indicate a clear propulsion issue, nor does it demonstrate Mr. McCabe's negligence.

8. The Government called Captain Ciederman as a witness to provide his perspective on the bruise Ms. Hester sustained from the spear gun. Although he lacks medical expertise,

Captain Ciederman testified that significant force is required to bend a spear gun, comparable to the force of an engaged propeller. He suggested that the only plausible explanation for the incident was a propulsion issue. However, when questioned by the defense, he admitted to merely relaying what he had been told by Ms. Hester after their conversation. Most importantly, he acknowledged that he had not engaged in spear fishing since his youth. This testimony is insufficient for the Government to establish a propeller issue.

9. The narrative presented by the Government revolves around Ms. Hester's testimony that the propellers were engaged, supported by reiterations from the investigators. However, there is no substantial evidence to substantiate these claims.

10. Sandra Brammer testified that she regarded Mr. McCabe as a good person. Without prompting, she emphasized not only his good character but also how he had assisted her on numerous occasions in repairing her own vessel. This clearly illustrates that he is not only a skilled and reliable captain but also an experienced seaman.

11. On March 29th, the Government's own witnesses testified that the vessel functioned without issue. The first diver, Dave Anderson, testified that the charter proceeded smoothly, and no mechanical failures were reported. The alleged malfunction cited by the Government was not evident during these operations.

12. At trial, the government alleged that the boat experienced a propulsion and steering issue and was non-operational on Saturday, the 28th. However, testimony presented shows that was Mr. McCabe able to operate the vessel successfully and completed its trips on both March 28th and March 29th without any propulsion or steering issues. Testimony and evidence presented failed to demonstrate any loss of main propulsion.

13. Mr. McCabe testified that he acted responsibly after experiencing issues on the 28th by promptly having his mechanic, John, come onboard to address any repairs. Every witness confirmed that Mr. McCabe's mechanic arrived promptly to address any identified issues, none of which were related to propulsion.

14. Mr. McCabe explained why he did not report the alleged "grounding": it did not occur. While Coast Guard regulations mandate reporting groundings, Mr. McCabe was anchored at the time. He testified that he had dropped anchor, and there was no damage to the boat, nor was a tugboat necessary.

15. The Government presented no evidence to support its claims of grounding. They have offered no conclusive proof of such an incident. Mr. McCabe was not ticketed or fined, and there is no official determination that he was grounded. He testified that he was not grounded.

16. The only testimony regarding a grounding came from Jennifer Hester. The Government also called investigators as witnesses, but they merely relayed what they learned from Ms. Hester, who is neither a captain nor a mechanic. In contrast, Mr. McCabe testified that he and his mechanic conducted thorough inspections of the boat and found no propulsion issues.

17. Even Ms. Hester confirmed in her testimony that John's mechanic arrived promptly. This detail was consistent across all witness accounts regarding the alleged grounding. The divers who testified last week stated that Mr. McCabe called his mechanic to address any issues, a fact that remains undisputed.

18. It is vital to recognize that the Government cannot reasonably assert that Mr. McCabe, after being informed of issues and summoning his mechanic for repairs, could be labeled

negligent or inattentive to his responsibilities. He acted precisely as any responsible sea captain would.

19. The Government alleged that Mr. McCabe failed to address issues with his boat. However, Ms. Hester herself acknowledged the mechanic was present onboard. If Mr. McCabe had truly neglected to resolve problems, he might be deemed negligent and inattentive. But that is not the case here, especially since every witness confirmed that he reached out to his mechanic, and they reported seeing the vessel's mechanic arrive and initiate repairs. Mr. McCabe stated that he started the boat while it was in the water and carefully inspected the engine and propulsion system. He identified a separate issue with the starboard battery, which he promptly resolved, enabling him to take the boat out the very next day.

20. The Government failed to provide clear evidence of the alleged malfunction of the boat or any negligence in repairing it.

21. During the trial, the vessel, the Southern Comfort—central to the Government's case—was unavailable for inspection. Without a physical examination, the Government cannot definitively demonstrate that a propeller malfunction occurred, a critical element of their argument.

22. The absence of the vessel creates a significant gap in the evidence. The jury was unable to observe it, nor did the Government present any testimony regarding identified issues or repair efforts, aside from Mr. McCabe's account. The Government cannot ascertain the facts without this essential piece of evidence upon which they have built its entire theory.

23. The Government failed to inspect the vessel when it was available. This lack of due diligence undermines their ability to present a credible case regarding any mechanical faults of the vessel.

24. The unavailability of the Southern Comfort for inspection leaves a critical void in evidence. The Government's inability to physically examine the vessel undermines their case, as they cannot definitively demonstrate a propeller malfunction.

25. Moreover, the Government's narrative did not account for the dynamic and ever-changing nature of marine environments. Mr. McCabe provided testimony regarding the prevailing waves and wind conditions. Additionally, the medical examiner presented crucial evidence.

26. While the injuries appeared serious, the medical examiner clarified that the victim's wounds were, in fact, superficial and not life-threatening. He emphasized that with appropriate medical attention, she would likely have survived. Mr. McCabe testified that it took 26 minutes for assistance to arrive after he contacted the U.S. Coast Guard.

27. Mr. McCabe also indicated that the presence of waves could explain the injuries classified by the medical examiner as superficial, rather than attributing them to the propeller, as the Government claimed. He explained that if the propeller had been engaged, it would have rotated at a speed of 42 times per minute, potentially causing over 20,000 wounds. According to the medical examiner, such a high number of wounds could not be classified as superficial.

28. This discrepancy between the Government's claims and the medical examiner's findings raises substantial doubt about the true circumstances surrounding the incident.

29. At trial, the Government also sought to convince the jury that Mr. McCabe committed wire fraud in relation to his application and forgiveness requests for the Paycheck Protection Program (PPP).

30. They presented the jury with his applications, alleging that he misreported both the number of employees and the total payroll amount. However, Mr. McCabe stated that he meticulously followed the bank's instructions, seeking real-time assistance while

completing the application. He testified that he was advised to report the number of employees who would have returned had the boating segment of his business been operational, maintaining that this was the correct way to complete the applications.


## **ARGUMENT**

31. The Government's rhetorical flourishes in its Response to Mr. McCabe's Motion for Acquittal do not cover up the significant legal flaws that pervade its argument. This Reply will address some of those flaws and demonstrate why the motion should be granted.

32. In its response, the Government asserts that the Defendant's negligence concerning M.C.G.F.'s death was supported by three entirely different and separate theories presented by their witnesses. The Government claims that Mr. McCabe's alleged faulty modifications to the throttle controls and his failure to adequately address these issues upon notification constituted negligence that directly contributed to M.C.G.F.'s death.

33. However, the Government did not provide any supporting testimony regarding these modifications to substantiate this theory. The evidence presented related to modifications made to the vessel was intended to support their claim in Count 3, which involved false statements regarding the classification of the vessel.

34. At no point did the Government propose any theories indicating that the vessel's refitting contributed to the incident. Moreover, they failed to present any testimony or evidence demonstrating that these modifications were a causal factor in the event. As previously noted, the Government neglected to inspect the vessel after the incident, resulting in a lack of evidence concerning the cause of the incident—leaving them with mere speculation and numerous potential scenarios. Furthermore, testimony from the Government's own witnesses indicated that there was no failure to address any identified issues. On the

contrary, the testimony revealed that Mr. McCabe acted swiftly, bringing his mechanic on board immediately to assess for mechanical problems and perform necessary repairs.

35. The Government asserts that even if its case-in-chief is insufficient on its own, the Court should deny the Defendant's motion based on the premise that the Defendant's decision to testify implies the jury's guilty verdict was informed by the evidence presented and was reasonable.

36. However, considering all the evidence in the aspect most favorable to the government, there was insufficient evidence upon which a reasonable jury could have found Mr. McCabe guilty beyond a reasonable doubt.

37. It is undisputed that, in federal court, a defendant's sworn testimony must be treated just as the testimony of any other witness, and his testimony which itself is evidence may supply the very factual element or elements necessary to his conviction.

38. But while a criminal defendant runs the risks associated with all federal trials he should not be penalized in a way different from other litigants in federal court by forfeiting thereby the basis for rational appellate review of the evidence.

39. The Government claims that that by presenting testimony a defendant waives the right to argue his Rule 29 motion. Here there has been no additional evidence provided by the defendant to shore up the government's case, to carry it from "possibly" to "beyond a reasonable doubt."

40. In *Cosby v. Jones,* 682 F.2d 1373 (11th Cir. 1982)*,* the court held that the bare fact of possession and the pawning of stolen goods, absent some type of corroborating evidence or circumstances, does not give rise to an inference sufficient to support a defendant's conviction for burglary. The court observed that the defendant's explanations of his possession of the stolen goods was not seriously contradicted by any evidence of the

government. *Id.* at 1382. The court further noted that the inference of stolen goods "is at its strongest when the defendant wholly fails to make a credible explanation or makes a demonstrably false explanation." *Id.* at 1382-83. Cosby's explanation of possession was found not so implausible or demonstrably false to give rise to positive evidence in favor of the prosecution. *Id.* at 1383 n. 19.

41. The state also points to the inconsistencies in Cosby's explanation of possession. *See* note 17 *supra.* His testimony was not so implausible or demonstrably false as to give rise to positive evidence in favor of the government. *Accord, Holloway v. McElroy, supra,* 632 F.2d 605, at 641 (5th Cir. 1980) (inconsistencies in defendant's story do not support government's case but only discredit the specific points in defendant's testimony). *Compare U.S. v. Contreras,* 667 F.2d 976, 980 (11th Cir. 1982) ("wholly incredible" evidence bolsters government's case). *Cosby,* 682 F.2d at 1383 n. 19 (emphasis added).

42. Subsequent Eleventh Circuit cases involving the effect of statements, testimonial or out-of-court, by defendants, have adhered to the *Cosby* analysis: the usual rules governing testimony by all witnesses are followed with the exception that an aberrational statement (in or out of Court) by its implausibility or falseness, demonstrable to the appellate court from the record itself, may provide corroboration for an inference arising from behavior requiring explanation. *United States v. Allison,* 908 F.2d 1531, 1535 (11th Cir. 1990), was decided on the right of the jury to make a credibility determination.

43. The jury in this case had the opportunity to consider not only the evidence presented in the prosecution's case, but the testimony of defendants themselves. This is important. "Presented with two narratives, one tending to establish the defendant's guilt and another tending to establish innocence, the jury was entitled to choose the account offered by the government." *Id.* at 1535 (citation omitted).

44. In *U.S. v. Bennett,* 848 F.2d 1134, 1139 (11th Cir. 1988), the court found: "We conclude that there was ample evidence from which a reasonable jury might find both William and Michael Bennett guilty beyond a reasonable doubt." The Court noted the fact that the Bennetts's in-trial explanation of their activities was "dubious, if not wholly incredible." The court stated that "a reasonable jury might well disbelieve the explanation and conclude that the Bennetts were lying in an attempt to cover up illegal activities."

45. But, in this case the government's evidence was barely sufficient to establish even a "possibility" of guilt. There is no suggestion that Mr. McCabe's testimony was either demonstrably false, dubious or implausible.

46. Demeanor is a factor which the jury may take into account in assessing credibility — it is not evidence itself. The jury was entitled to believe the "opposite" of what McCabe said, but only if there was some evidentiary basis for whatever that "opposite" was.

47. Since the government's evidence is insufficient to establish guilt beyond a reasonable doubt even after giving it the benefit of all reasonable inferences, the Defendant's moti9n should be granted.

## <u>CONCLUSION</u>

The defense submits that the evidence was insufficient to sustain a conviction under any of the five Counts, and Mr. Mcabe should be acquitted.


Respectfully submitted,


**TERRENCE O'SULLIVAN**
3810 Murrell Road #340
Rockledge, Florida 32955
321-422-2882 (office)
321-848-2144

**CALISHA A. FRANCIS**
3920 Woodside Drive #10
Coral Springs, Florida 33065
954-612-6126

<u>**THIS SPACE INTENTIONALLY LEFT BLANK**</u>

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically noticed through the CM/ECF system to Zachary A. Keller, AUSA, and all other parties of record, on this 28th Day of April, 2025.

    Respectfully submitted,

                         **TERRENCE O'SULLIVAN**
                         3810 Murrell Road #340
                         Rockledge, Florida 32955
                         321-422-2882 (office)
                         321-848-2144

                         */s/ Terrence J. O'Sullivan, Esq.*
                         **TERRENCE J. O'SULLIVAN**
                         Attorney for Mr. McCabe
                         Florida Bar Number: 0644031
                         Terrence@TerrenceOSullivanLaw.com

                         **CALISHA A. FRANCIS**

3920 Woodside Drive #10
Coral Springs, Florida 33065
954-612-6126

*/s/ Calisha A. Francis, Esq.*
**CALISHA A. FRANCIS**
Attorney for Mr. McCabe
Florida Bar Number: 96348
cthomlaw@aol.com